Argued August 20, reversed October 22, 1979

# MAHONEY, et ux,
*Petitioners,*

*v.*

# ADMINISTRATIVE SCHOOL DISTRICT
## No. 1, et al,
*Respondents.*

## (CA No. 13417)

601 P2d 826

Daniel J. Gatti, Salem, argued the cause for petitioners. With him on the brief was Gatti, Ward & Gatti, Salem.

Lyman C. Johnson, Bend, argued the cause for respondent Administrative School District No. 1. With him on the brief was Panner, Johnson, Marceau, Karnopp, Kennedy & Nash, Bend.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent Department of Education. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

LEE, J.

**LEE, J.**

Petitioners are the parents of a mentally retarded minor child. After a relatively brief period of attending one of the public schools operated by the respondent school district, the child was enrolled in the Shangri-La School, a private facility which offers a year-round program of education and related services for trainable mentally retarded persons. Petitioners brought this proceeding pursuant to former ORS 343.077,[1] seeking a determination that year-round residential placement at Shangri-La was necessary for the child and that the district was required by ORS chapter 343 and the Education for All Handicapped Children Act of 1975 (20 USCA § 1401 *et seq*) (the federal Act) to pay the child's tuition at Shangri-La.

The hearings officer found that year-round residential placement at Shangri-La was appropriate and necessary to provide special education and related services to the child, and she ordered the school district to pay the child's tuition for the year-round program. The school district sought review of that order by the respondent Department of Education. The Deputy Superintendent of Education accepted the hearings officer's finding that the child's educational needs required his placement in the full-year program at Shangri-La. However, the Deputy Superintendent concluded that ORS 343.077 conferred authority on the hearings officer and him only to determine the child's placement and that they had no authority to direct the school district to pay tuition. The Deputy Superintendent reversed the portion of the hearings officer's order which purported to determine responsibility for tuition payments. Petitioners appeal.

Four general issues are raised by the parties: First, whether ORS chapter 343 or the federal Act confers a

---

[1] ORS 343.077 was repealed, effective July 18, 1979, by Oregon Laws 1979, Chapter 423, and a new hearings procedure was adopted by that Act. However, all relevant actions at the administrative level in the present case took place prior to the effective date of the 1979 Act.

[667]

substantive right on petitioners to public financing of tuition payments for the child's attendance at the private facility; second, if so, whether that right includes payment of tuition for the full-year program, or is limited to tuition expenses for the part of the child's attendance which is equivalent in duration to the district's regular school year; third, whether the federal Act imposes any substantive requirements on state and local school systems which state law does not independently authorize, as opposed to being merely a source of funding and of conditions for the receipt of funds; and fourth, whether ORS 343.077 empowered the hearings officer or the department to order payment of tuition as well as directing placement of the child. We will consider those issues in the order enumerated.

1. Neither the school district nor the department contend that the needs of petitioners' child do not require his full-year residential placement at Shangri-La, or that the hearings officer and Deputy Superintendent lacked the authority to order that placement. The only question is whether state or federal law requires tuition payments by the school district for some portion or all of the special education program ordered by the hearings officer.

Turning first to Oregon law, ORS 343.085 provides:

> "Except as provided in ORS 343.730 relating to driver instruction, no tuition shall be charged to any resident student participating in any special program authorized by this chapter."

ORS 343.035(3) defines "special education" as meaning:

> "* * * specially designed instruction to meet the unique needs of a handicapped child, including regular classroom instruction, instruction in physical education, home instruction, related services, and instruction in hospitals, institutions and special schools."

The federal Act provides that state and local educational units which receive funding under the Act shall

provide handicapped children with a "free appropriate public education." 20 USCA § 1412(1). A "free appropriate public education" is defined by 20 USCA § 1401(18) as including "* * * special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, * * * and (D) are provided in conformity with the individualized education program * * *." "Special education" is defined by 20 USCA § 1401(16) as meaning "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including * * * instruction in hospitals and institutions." Especially relevant is 45 CFR § 121a.302, a regulation promulgated under the federal Act, which provides:

> "'If placement in a public or private residential program is necessary to provide special education and related services to a handicapped child, the program, including non-medical care and room and board, must be at no cost to the parents or child.'"

The most apposite prior interpretation of the quoted federal provisions is the New York Family Court's decision in *In the Matter of Scott K*, 92 Misc 2d 681, 400 NY Sup 2d 289, 291 (Fam Ct 1977), where it was indicated in dicta that state and local school authorities could be required to provide and fund free residential placement in a full-year special education program when required by the needs of the child.

We agree with the New York Court, and we conclude that under both the Oregon and federal statutory structures, handicapped children are entitled to receive a free appropriate public education consisting of special education and related services designed to meet the individual needs of the particular child. The special education requirements in some cases can necessitate the child's placement in a private residential facility. The educational program is to be provided without cost to the child's parents or guardians. It follows that here, where private residential placement has been found necessary, the tuition expense must be borne by the school district.

[669]

■ 2. The district argues that its responsibility for payment of tuition, if any, is limited to the length of the regular school year which, under Department of Education rules, consists of a "minimum of 175 days per year of appropriate educational instruction." In *Armstrong v. Kline*, 476 F Supp 583 (ED Pa, June 21, 1979), the Pennsylvania Department of Education and various local school districts interposed an identical defense. In *Kline*, five handicapped children and their parents sued to compel public school authorities to provide the children with free special education programs, including residential placement in some of the cases, for periods longer than 180-day limit permitted by Pennsylvania Department of Education policy. After discussing the facts and analyzing the federal statutory provisions discussed above, the United State District Court concluded that the unique needs of certain handicapped children, including those before it, required special education programs with a continuity of more than 180 days a year, and the court therefore held that "the 180 day rule deprives plaintiffs and the class they represent of an 'appropriate education' and violates the Education for All Handicapped Children Act." 476 F Supp at 605. We agree with the reasoning in *Kline.*

3. Respondents argue that the Act does not apply "directly" to the states or impose substantive requirements which supersede those of state law. According to respondents, the Act is designed to create a program of federal assistance and to impose eligibility criteria on the states rather than to mandate that state and local school authorities conduct particular programs which are not independently required by state statutes or regulations.

It is correct that the programmatic provisions of the Act are open-ended and much definition is left to the states. *See*, generally, Note, "Enforcing the Right to an 'Appropriate' Education: the Education for All Handicapped Children Act of 1975," 92 Harv L Rev 1103,

[670]

1125-1127 (1979). It is manifestly incorrect, however, that the Act imposes *no* substantive requirements or that state and local school systems which have received funds under the Act are free to disobey its substantive provisions. The court stated in *Armstrong v. Kline, supra:*

> "For state educational agencies, the Education for All Handicapped Children Act serves both as a source of funds and of obligations. Besides supplying them with federal monies to help support the education of handicapped children, the Act imposes certain duties on these state agencies and the local and intermediate educational agencies which receive funds from them. One of the major responsibilities of these agencies is assuring all handicapped children provisions of a 'free appropriate public education.' * * *" 476 F Supp at 602.

■ Hence, it may be the case that congress intended to leave the definition of "appropriate" education sufficiently loose to enable local legislatures and school officials to make appropriate programmatic decisions and to adapt those decisions to individual cases. However, the Act plainly does not give the states and localities discretion over whether the appropriate education programs they develop are to be "free". It is not necessary for us to decide here how much programmatic discretion the Act leaves for decision at state or local levels. The administrative action by both the hearings officer and the Deputy Superintendent have resulted in the placement of petitioners' child in the year-round program at Shangri-La School, and, as noted earlier, no party challenges that placement decision. For the reasons we have stated, the school district is required to pay the tuition costs connected with the placement.

4. Former ORS 343.077 provided, as relevant:

> "(1) A child shall be considered for special education upon application by the parent, legal guardian or surrogate of the child or by the school district. Upon appropriate evaluation the child may be found eligible for special education under a school district

[671]

program approved under ORS 343.221. Such evaluation shall be made within a reasonable time.

"(2) A child who is thought to be eligible and in need of special education by the school authorities or parents, guardians or surrogate of the child shall neither be placed in, transferred from nor be denied placement in such a program unless the administrative officers of the school district shall have properly notified the parents, legal guardians or surrogate of the child of such proposed placement, transfer or denial and the right to due process. The proceedings shall be those for a contested case under ORS chapter 183 with the school district being the agency within the meaning of applicable provisions of ORS chapter 183. The notification must be in the parents', guardian's, or surrogate's native language, unless it is clearly not feasible.[2]

The school district and the department argue that the statute authorized administrative action only in connection with placement of the child and did not empower the hearings officer or the Deputy Superintendent to direct the school district to pay tuition. The district and department concede that ORS 343.077 did authorize the administrative action to place the child in the Shangri-La School, and they do not argue that the hearings officer or Deputy Superintendent erred in that placement decision. If, as we have concluded, applicable law requires that the school district pay tuition to a private facility in which a child is placed, the tuition requirement automatically follows from the placement decision which the the district and department do not challenge.

■ The respondents are correct in stating that the language of ORS 343.077 did not *expressly* authorize the hearings officer or the Superintendent to decide the issue of costs as well as the issue of placement (nor does any other statute we find). However, given our

---

[2] ORS 343.077(5) provided that the school board's decision is appealable to the Superintendent of Public Instruction. Under former ORS 343.077(6), the Superintendent's final order is in turn reviewable by this court pursuant to ORS 183.480 *et seq.*

conclusion that the issue of costs is necessarily determined by the placement decision, the hearings officer's order for payment of tuition was, at worst, surplusage. The respondents' view of the remedial scope of ORS 343.077 is contrary to the principle that multiplicity of proceedings is to be avoided. The legislature could not rationally have intended in enacting ORS 343.077 to require two separate proceedings, administrative or judicial (*cf.* 20 USC § 1415), when the decision in the second is wholly governed by the decision in the first. Moreover, if, as is the case, there has been a final placement decision based on a finding that participation in the Shangri-La School's full-year program is necessary for petitioners' child, any delay in the child's participation in the program occasioned by requiring his parents to go through a redundant second proceeding would defeat what the placement decision was designed to achieve.[3]

The final order of the Deputy Superintendent is reversed and the hearings officer's order is reinstated.

Reversed.

---

[3] There was a finding in the present case, as in *Armstrong v. Kline, supra,* that the child had "regressed, or at least failed to progress" in the absence of a program of the kind provided by the Shangri-La School. He had earlier been enrolled in California in a program comparable to that of Shangri-La and regression occurred during the period he was enrolled in the regular school operated by the school district.