Argued and submitted April 11, reversed and remanded July 11, reconsideration allowed; former opinion adhered to (70 Or App 219, 689 P2d 334) October 10, reconsideration denied December 7, 1984, petition for review denied January 29, 1985 (298 Or 597)

In the Matter of Richard Scott
Wilson, Student.

LAUGHLIN et al,
*Respondents - Cross-Petitioners,*
DEPARTMENT OF EDUCATION OF THE
STATE OF OREGON,
*Respondent - Cross-Respondent,*

*v.*

SCHOOL DISTRICT NO. 1,
MULTNOMAH COUNTY,
*Petitioner - Cross-Respondent.*

(CA A25473)

686 P2d 385

P. Conover Mickiewicz, Portland, argued the cause for petitioner - cross-respondent. With her on the briefs were Graham M. Hicks and Miller, Nash, Yerke, Wiener & Hager, Portland.

Steve Brischetto, Portland, argued the cause and filed the brief for respondents - cross-petitioners Philip and Jaqueline Laughlin.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent - cross-respondent Department of Education.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Respondents Laughlin (parents) brought this complaint before the Department of Education (department), alleging that Multnomah County School District No. 1 (district) failed to provide a "free appropriate public education" for their son, Scott, and otherwise violated various provisions of ORS chapter 343, the department's administrative rules, OAR ch 581, div 15, the Education For All Handicapped Children Act of 1975 (the EHA), 20 USC § 1400 *et seq* (1982), and the Rehabilitation Act of 1973. 29 USC § 794 (1982). The department found that the district had violated applicable state and federal laws and awarded parents partial reimbursement of the tuition cost that they had incurred by enrolling Scott in a private school. Parents' request for attorney fees was denied. District petitions; parents cross-petition. We review pursuant to ORS 183.482.

Scott is an emotionally handicapped and learning-disabled child with severe behavior problems. During the 1980-81 school year, he was placed in at least four different schools, none of which met his special education needs. Although state and federal law requires the district to give written notice to parents of their rights and duties regarding changes in Scott's educational placement,[1] adequate notices were not provided.[2]

Scott's behavior progressively worsened during that school year, and there were periods during which he was not attending any school because of absences and suspensions. We quote the department's relevant findings at some length, because they do not lend themselves to summary:

"7. During the academic year 1980-81, the parents of Scott Wilson experienced frustrating difficulties in communicating with Portland Public Schools. School administrators responsible for decisions relating to Scott Wilson were changed, his file was lost, due process hearings were delayed by death of the hearings officer, by the failure to pay the second hearings officer, and for many other reasons. Delays in

---

[1] *See* 20 USC § 1415(b)(1); 34 CFR 300.504; ORS 343.163(3)(d); OAR 581-15-075.

[2] The department found that parents participated in each placement decision, but "did so without the benefit of the written, detailed statements of explanations of the School District's intentions and the parents' rights required under both federal and state regulations."

procedures kept occurring and reoccurring. The April 28, IEP (individualized education program) meeting was a long-postponed January meeting which was delayed for lack of the Portland Public Schools obtaining a written report from Good Samaritan Hospital following a January evaluation of Scott Wilson. The IEP meeting was finally held after Scott Wilson's parents physically obtained and delivered a copy of the report.

"8.    On January 9, 1981, the parents requested a due process hearing. Prehearing conferences were held, with the outcome being that the parties would mutually work toward agreement after the receipt of an independent evaluation from Good Samaritan Hospital. A due process hearing was scheduled, postponed, and finally rescheduled for June 26, 1981. The parents withdrew from the June 26, 1981 hearing. The hearing process was renewed in December of 1981.

"9.    Scott became a ward of the Multnomah County Circuit Court on January 30, 1981 as the result of his parents' inability to control his behavior. This was a voluntary wardship which was terminated. The Children's Services Division caseworker, however, continued to attempt to aid Scott. Sometime in late May or early June of 1981, Scott again became a ward of the court and Children's Services Division. Scott Wilson was in temporary custody of Children's Services Division while he was at Waverly in February of 1981 and again at Waverly while he was held after one of his running episodes in June. Scott Wilson was not, during the balance of the 1980-81 school year and particularly from April 28, 1981 until he was held at Waverly in June, in custody of Children's Services Division.

"10.    Portland Public Schools held a placement meeting on April 28, 1981, which led to an individualized educational program (IEP) which provided that Scott needed a 24 hour residential setting which would be secure enough to keep Scott from running and which would be able to meet Scott's immediate behavioral needs, as well as deal with his academic deficiencies. The representatives of Portland Public Schools, Mr. Harris and Mr. White, either on April 28, 1981 or at a subsequent meeting on May 4, 1981 signed the IEP and acknowledged the responsibility of Portland Public Schools for Scott's placement.

"11.    The agreed-on placement in the IEP, a residential placement such as St. Mary's Home, was not made available to Scott Wilson. Portland Public Schools' delay in agreeing to pay for tutoring for Scott contributed to a delay in a space being available at St. Mary's. During the time from April 28

until June 17, Scott Wilson went through a series of temporary, unsuccessful alternative situations, including a foster home, his parents' home, and running. At times he was placed in custody at the Donald E. Long Home and eventually in June of 1981, for a few days, at the Waverly Home. Scott's stay at Waverly was merely to hold him following one of his running episodes and was not a residential placement by Portland Public Schools, pursuant to the IEP.

"12. During May and early June of 1981, the parents sought a commitment from the district for placement consistent with the IEP for Scott and investigated both in the district and outside the district, and in and out of state residential placements for him.

"13. The parents placed Scott at Provo Canyon School in Utah on June 20, 1981.

"14. The parents have incurred expenses in placing Scott at Provo of $3,400, initial processing fee, plus $1,700 per month from time of placement to present."

The parties raise four general issues: first, whether the allegations that the district denied Scott a "free appropriate public education" and otherwise violated state and federal laws were properly before the department; second, whether the department, after finding that such violations had occurred, has the authority to require the district to reimburse the parents, in part, for expenses that they had incurred; third, whether the department may award parents attorney fees; and, fourth, whether the department's findings of fact are supported by substantial evidence. We consider each issue in turn.

The district contends that the gravamen of parents' complaint is that no appropriate placement was made available to Scott. It argues that, under the department's own rules and the federal regulations implementing the EHA, disputes over the availability of a program appropriate for a handicapped child may only be brought in what the regulations characterize as an "impartial due process hearing." Parents' allegations were brought in a "complaint hearing," governed by OAR 581-01-010(1), which provides:

"As used in this rule, 'complaint' means a signed written allegation of substance submitted to the State Superintendent of Public Instruction * * * which alleges that the State or a subgrantee has violated a federal statute or regulations that

apply to a federally funded program. However, 'complaint' does not include allegations that may be resolved through an impartial due process hearing under OAR 581-15-075 through 581-15-096 or 45 CFR 121a.504 through 121a.513."[3]

On receiving a complaint, the superintendent is required to conduct an investigation and, if substantial evidence supports the allegations in the complaint, hold a "complaint hearing." OAR 581-01-010(2) and (3).

The availability of the "impartial due process hearing" referred to in OAR 581-15-010(1) is set forth in OAR 581-15-081(1):

"A parent or the school district may request a hearing when either party does not agree with the identification, preplacement or annual evaluation, individualized educational plan, educational placement of a child, or the provision of a free appropriate education to a child who may be handicapped * * * "

As the state agency responsible for ensuring that local districts comply with the EHA, 20 USC § 1412(6), ORS 326.111, 343.155, the department is required to provide both "complaint" and "due process" hearing procedures.[4]

■ Had parents' complaint alleged only that they disagreed with the district's individualized educational plan or educational placement for Scott, it appears that the above quoted rules provide that the proper forum for resolution of that matter would be a "due process hearing." However, parents' complaint alleged that an appropriate educational program was not made available to Scott and also that the district violated various other federal statutes and regulations. Accordingly, the correct forum, at least for resolution of the additional alleged violations, is a "complaint hearing."

■ The department considered whether parents' complaint was properly before it and decided to proceed with the

---

[3] The provisions of 45 CFR 121a.504 through 121a.513 are now found at 34 CFR 300.504 to 300.513. Section 121a.403(b), now found at 34 CFR 300.403(b), provides:

"Disagreements between a parent and a public agency regarding the availability of a program appropriate for the child, and the question of financial responsibility, are subject to the due process procedures * * *."

[4] See 20 USC § 1415; 34 CFR Part 300, Subpart (E); 34 CFR 76.780; ORS 343.165(2).

"complaint hearing" on the alleged violations of federal law, leaving the dispute over the availability of an appropriate educational program to be resolved through a "due process hearing."[5] The department concluded:

> "* * * The complaint process is the correct forum for resolution of the matters that will be determined in this order, which are only the timeliness of implementation of the agreed upon IEP and procedural violations."

We find no reversible error, if there was error, in the department's decision to limit the scope of the "complaint hearing" to those matters which are appropriate subjects of that kind of proceeding.[6] ORS 183.482(7).

Next, the district contends that, even if it did violate federal statutes and regulations, the department has no authority under the EHA or its own regulations to award parents tuition reimbursement as a sanction. The district relies primarily on section 1415(e)(3) of the EHA:

> "During the pendency of any proceedings conducted pursuant to this section [§ 1415], unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed."

Federal courts, reviewing state "due process hearings," have divided on the question whether section 1415(e)(3) bars an award of retroactive tuition when parents unilaterally place their children in private schools while a "due process hearing" is pending. Some have held that it does, see, e.g., Stemple v. Board of Ed. of Prince George's Cty, 623 F2d 893 (4th Cir 1980), cert den 450 US 911 (1981), and others have held that it does

---

[5] A "due process hearing," requested by parents, was held concurrently with, but independently of, this complaint hearing.

[6] The bureaucratic maze that appears to have been created to "facilitate" the attainment of special education for children requiring it brings to mind the words of Robert Burns in his poem, "To a Mouse":

> "The best-laid schemes o' mice an' men
>   gang oft a-gley,
>
> "An' lea'e us naught but grief and pain,
>   For promised joy."

not under certain circumstances. *See, e.g., Anderson v. Thompson,* 658 F2d 1205 (7th Cir 1981); *Boxall v. Sequoia Union High School Dist.,* 464 F Supp 1104 (ND Cal 1979).

■ We need not decide whether tuition reimbursement is allowed by section 1415(e)(3) of the EHA, because we conclude that section 1415 does not apply to this case. That section and 34 CFR 300.500 to 300.589 set forth the minimum procedural safeguards a state must provide to special children and their parents when making decisions that affect them. ORS 343.153 to 343.193 and OAR 581-15-075 to 581-15-105 are designed to provide those safeguards; arguably, section 1415(e)(3) limits the remedies available under the EHA in those "due process hearings." Here, we are reviewing a "complaint hearing" governed by OAR 581-01-010, which is designed to meet the requirements of section 1412(6) and 45 CFR 121a.602 (1979).[7] Those requirements are that a state

---

[7] 20 USC § 1412(6) provides:

"The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the State, including all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency and shall meet education standards of the State educational agency."

*Former* 45 CFR 121a.602 provided:

"(a) Each State educational agency shall adopt effective procedures for reviewing, investigating, and acting on any allegations of substance, which may be made by public agencies, or private individuals, or organizations, of actions taken by any public agency that are contrary to the requirements of this part.

"(b) In carrying out the requirements in paragraph (a) of this section, the State educational agency shall:

"(1) Designate specific individuals within the agency who are responsible for implementing the requirements;

"(2) Provide for negotiations, technical assistance activities, and other remedial action to achieve compliance; and

"(3) Provide for the use of sanctions, including the withholding of Part B funds in accordance with § 121a.194."

Among other revisions in the federal regulations implementing the EHA, the complaint procedure requirement of 45 CFR 121a.602 was revoked on April 3, 1980 (Fed Reg Vol 45, No. 66, p 22531), and the complaint procedure requirement of the Education Division General Administrative Regulations (EDGAR)(formerly at 45 CFR § 100b.780 (1980) and now at 34 CFR 76.780 (1983)) was substituted.

Although *former* 45 CFR 121a.602 specifically required state complaint procedures to provide for the use of sanctions to assure compliance with the EHA,

ensure that local districts comply with the EHA, have complaint procedures available for alleged violations and provide for the imposition of sanctions against noncomplying districts. We find no express or implied limitations in the EHA on what sanctions a state may employ to insure district compliance. The fact that there may be a limitation on remedies available under the EHA in "due process hearings" does not appear to require a limitation on the permissible sanctions a state may impose in "complaint hearings."

The question, then, is whether the department has authority under state law to order the district to reimburse parents for out of pocket expenses incurred as a direct result of the district's violation of the EHA. The department considered reimbursement "appropriate," because the district's "egregious" failure to comply with the provisions of the EHA and federal regulations, a failure bordering on "bad faith," was "detrimental" to Scott and his parents; if the parents had not taken unilateral action to place Scott in a private school, "he would have been a continuing danger to himself and to others." The department concluded that reimbursement was an "appropriate sanction," as that term is used in OAR 581-01-010(3), which provides, in part:

> "* * * If the State Superintendent determines that the state or subgrantee has violated any provisions of federal statute or regulations pertaining thereto, the State Superintendent *shall order appropriate sanctions which may include:*
>
> "(A)   Daily finds *[sic]*; or
>
> "(B)   The withholding of any or all monies from state or federal sources which support the program." (Emphasis supplied.)

■    It is elementary that the authority for an agency's administrative acts must be found in an enabling statute. The legislature has delegated broad regulatory and rule making

---

EDGAR requires only that states provide a complaint procedure to receive, investigate and resolve complaints regarding violations of federal law or regulations. However, another EDGAR rule, *former* 45 CFR 100b.772(4) (1980), now 34 CFR 76.772 (1983), requires states to:

> "*Develop procedures, issue rules, or take whatever action may be necessary to properly administer each program* and to avoid illegal, imprudent, wasteful, or extravagant use of funds by the State or a subgrantee." (Emphasis supplied.)

We note that the department adopted OAR 581-01-010 on December 23, 1980.

authority to the department to enforce the EHA. *See* ORS 343.055(1); ORS 343.155. ORS 343.183(1) expressly grants the department authority, "in addition to and not in lieu of any other sanction," to *withhold* all or any part of a noncomplying district's special education funds *until* the district complies. If a district wrongfully refuses to pay for an independent evaluation of a special child, ORS 343.183(2) authorizes the department to withhold funds "in an amount not to exceed the expense incurred by the parent * * * for payment of the costs of the independent evaluation." Presumably, if a parent had already paid the cost of an evaluation, the department would be authorized to reimburse the parent from the withheld funds.

■■  ORS 343.183 contemplates that other sanctions may be imposed against noncomplying districts. Other sanctions are available under OAR 581-01-010(3), which provides that the superintendent shall impose "appropriate sanctions" on noncomplying districts, which "may include" the imposition of fines or the withholding of special education funds. Parents would have us read this rule to mean that the superintendent's authority to impose sanctions is unlimited as long as the sanction is "appropriate" in a given case. Given the statutory framework, the rule may not be construed so broadly. As noted above, when a district errs by refusing to pay for an independent evaluation, the department may withhold funds from the district and pay the cost of that evaluation. Even in that case, the department was not given statutory authority to require the *district* to pay money *directly* to an aggrieved parent. In view of that fact, and the lack of any other statutory authority on the point, we conclude that the superintendent does not have authority to order a district to pay money directly to an aggrieved party whenever the superintendent considers such an order an "appropriate sanction." Accordingly, the order of the superintendent requiring the district to reimburse parents a portion of the tuition expense that they had incurred enrolling Scott in a private school must be reversed.

■■  However, the district had a duty to provide Scott with a free appropriate public education and, its having failed in that duty, the department had authority to withhold funds from it. Although we have concluded that the department does not have authority to order the district to reimburse parents directly for costs incurred enrolling Scott in a private school,

the statute gives the department authority to withhold funds until the district complies with its statutory duty to Scott. Whether the district has failed in that duty by its failure to pay for Scott's private placement depends on whether that placement provided an education equivalent to that which the district had a duty to provide. If the placement of Scott was necessary and appropriate, the EHA mandates that his education be free. 20 USC § 1401(16); 34 CFR 300.302; *see also Mahoney v. Adm. Sch. Dist. No. 1,* 42 Or App 665, 669, 601 P2d 826 (1979). Although we agree with the parents that Scott's placement was necessary, we agree with the district that the record in this case does not show whether Scott's placement was appropriate. It has to be both; therefore, we remand the case to the department for further findings on that question.

■ This leaves the case in a peculiar posture. Plaintiffs have contended in their cross-appeal that they are entitled to attorney fees as the prevailing parties under the Rehabilitation Act of 1973, 29 USC § 794a(b). The parents were the prevailing party before the department, and are here, with respect to their claim that the district violated state and federal law. We have concluded, however, that the law requires us to reverse and remand this case to the department, because the relief granted on this record was beyond the department's authority. Notwithstanding that ambiguous posture of the case, we address parents' claim for attorney fees, because the issue is likely to arise on remand.

The parents concede that attorney fees are not available under the EHA, but argue that they are available under the Rehabilitation Act of 1973, 29 USC § 794a(b), which provides:

> "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

In *New York Gaslight Club v. Carey,* 447 US 54, 65, 100 S Ct 2024, 64 L Ed 2d 723 (1980), the court held that the term "proceeding" in a similar provision of Title VII of the Civil Rights Act of 1964[8] authorizes an award of attorney fees

---

[8] Section 706(k) of the Civil Rights Act of 1964, 78 Stat 259, 42 USC § 2000e-5(k) (1982).

incurred in both federal and state administrative hearings by a federal court reviewing those proceedings. Given that conclusion, the question becomes whether the term "court," as used in 29 USC § 794a(b), is intended to include state educational agencies by virtue of their quasi-judicial function, thereby empowering the agency itself to make the award. Parents rely on *Watson v. United States Veterans Administration*, 88 FRD 267 (CD Cal 1980), which so interpreted section 794a(b) in order to further the policy of the Rehabilitation Act. The court said that it did not think that Congress intended to condition the availability of attorney fees on the stage at which protection of federal rights is sought. Otherwise, the anomalous circumstance would be presented where parties who prevail before the state agency may not recover attorney fees, but those who lose at the agency level and prevail on appeal may recover attorney fees incurred at all levels of the proceedings.

We are persuaded by the reasoning in *Watson*. Furthermore, we doubt that Congress intended to provide benefits for special children without intending to give them the means to assure that they receive them. Accordingly, if the Rehabilitation Act of 1973 is applicable here, the department has authority to award attorney fees. The parents' complaint alleged violations of that act, but the department's order does not indicate whether parents prevailed on any of those claims. Therefore, we remand to the department to permit it to clarify its order with respect to parents' claims under the Rehabilitation Act and, if parents prevail, to determine whether attorney fees should be awarded in this case and if so, how much.

Finally, the district contends that certain of the department's findings of fact are not supported by substantial evidence. They are.

On petition, reversed and remanded for a determination of whether the private placement of Scott by his parents was appropriate and necessary and, if so, to determine the appropriate sanction not inconsistent with this opinion; on cross-petition, remanded for determination of parents' claim under the Rehabilitation Act and, if appropriate, reconsideration of parents' claim for attorney fees.