**MRS. W., et al.**

v.

**Gerald N. TIROZZI, et al.**

**Civ. No. H–85–389 (PCD).**

United States District Court,
D. Connecticut.

Feb. 7, 1989.

Douglas N. Crockett, Conn. Legal Service, Willimantic, Conn., Sharon Langer, Conn. Legal Service, New Britain, Conn., Mary Conklin, Conn. Legal Service, Waterbury, Conn., for plaintiffs.

Maureen Murphy, Asst. Atty. Gen., Hartford, Conn., for defendants.

RULING ON DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS

DORSEY, District Judge.

On May 7, 1985, plaintiffs, parents of handicapped children, and Connecticut Legal Services, commenced this action, pursuant to 42 U.S.C. § 1983, against the Connecticut State Board of Education; Gerald N. Tirozzi, the Connecticut Commissioner of Education; and the members of the Connecticut State Board of Education. Plaintiffs allege that the State Board's failure to make bona fide attempts to resolve their complaints against the Bridgeport Board of Education and the Connecticut Department of Children and Youth Services and to fully implement and conduct informal complaint resolution procedures ("CRP") required by federal regulations violates the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400–1485, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the due process and equal protection clauses of the fourteenth amendment.

On or about December 26, 1985, defendants moved for judgment on the pleadings claiming that plaintiffs had no private right of action to raise their claims under § 1983. Magistrate Margolis recommended that the motion be granted on the grounds that plaintiffs failed to raise their claims through the EHA's due process procedures, 20 U.S.C. § 1415; the State Board had a CRP in effect at the time plaintiffs

raised their complaints that complied with the Education Division General Administrative Regulations, 34 C.F.R. §§ 76.780–76.783 ("EDGAR"); and plaintiffs had failed to exhaust the administrative remedies set forth in the Act. On the ground that the EHA is a comprehensive remedial statute, and thus no private right of action lies against the State Board, the magistrate's recommended ruling was adopted, the State Board's motion was granted, and plaintiffs' complaint was dismissed.

On appeal, the Second Circuit reversed and remanded for further proceedings on the merits. *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir.1987). The State Board's petition for rehearing was denied.

*Discussion*

The State Board has moved again for judgment on the pleadings, contending that the Second Circuit did not address the main issue presented by their original motion for judgment on the pleadings, i.e., whether there is a right to the CRP which can be enforced under any of plaintiffs' legal theories, including 42 U.S.C. § 1983.

Plaintiffs argue that the Second Circuit has decided that their complaint states a cause of action under the EHA that survives attack on a motion for judgment on the pleadings. Plaintiffs contend that defendants are here asserting arguments that were fully presented and rejected by the Second Circuit. Plaintiffs also point out that defendants brief in support of this motion is nearly identical brief to that provided to the Second Circuit, evidenced by the entire set of briefs put before the Second Circuit in the prior appeal.

Defendants' present motion raises two claims: (1) plaintiffs do not have a right secured by the laws of the United States which would allow them to compel the State Board to comply with the CRP adopted in response to 34 C.F.R. § 76.780, *et seq.;* and (2) plaintiffs' complaint indicates that defendants had in effect a CRP

which includes the procedures required by EDGAR.

To resolve the present motion, the issues addressed and resolved by the Second Circuit must be examined. The Second Circuit identified those issues as follows:

Two principal questions are raised on this appeal. First, may a private right of action under 42 U.S.C. § 1983 be maintained for a claimed violation of the Education of the Handicapped Act, 20 U.S.C.A. §§ 1400–1485 (West 1978 & Supp. 1987)? And, must the administrative remedies provided under § 1415(b)(2) and (c) of the Act, and 34 C.F.R. § 76.1–76.902 (1980) be exhausted, or their exhaustion excused, prior to filing this civil rights action?

*Mrs. W.,* 832 F.2d at 750.

The Second Circuit concluded that 20 U.S.C. § 1415(f) allows parents to pursue claimed EHA violations by invoking procedures provided in § 1983, Section 504 of the Rehabilitation Act of 1973, and constitutional provisions. *Id.* at 759. Exhaustion of EHA administrative remedies under § 1415(b)(2) and (c) was excused in the case at bar because the pleadings allege defendants' refusal to consider and resolve complaints of system-wide violations of the EHA. *Id.* The court did not address the merits of plaintiffs' claims and remanded the case to this court for further proceedings on the merits. *Id.*

Defendants, as an alternative ground for affirmance, argued that they complied with the EHA, its implementing regulations, and particularly with CRP requirements. *Id.* at 758. However, "[b]ecause the district court granted judgment on the pleadings, [the court] had neither a record nor findings of fact that would permit intelligent review of this issue" and remanded "the question of the State Board's compliance to the district court for its consideration and determination."[1] *Id.*

---

1. At this time, the question of whether the State Board had a CRP in effect which includes the procedures required by 34 C.F.R. §§ 76.780–76.783 cannot be resolved. There have been no additions to the record nor is there a basis for

factual findings, i.e., the same record the Second Circuit found insufficient "to permit intelligent review of the issue." *Mrs. W.,* 832 F.2d at 758.

In ruling on a motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), all allegations pleaded by the non-moving party must be accepted and all reasonable inferences drawn in their favor. *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 54 (2d Cir.1985). To state a claim under 42 U.S.C. § 1983, plaintiffs must allege a deprivation of a right, privilege or immunity secured by the Constitution or laws of the United States. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). "[P]arents are entitled to bring a § 1983 action based on alleged violations of the EHA or the Due Process and Equal Protection clauses of the federal Constitution." *Mrs. W.*, 832 F.2d at 755.

The issue is whether plaintiffs' complaint alleges any violation of the laws of the United States that would entitle them to the relief requested; namely, an injunction compelling the State Board to make bona fide efforts to investigate and resolve complaints which relate to special education submitted to them pursuant to the CRP. Connecticut's state plan for fiscal years 1981–83 included a Connecticut State Department of Education complaint resolution procedure. *Mrs. W.*, 832 F.2d at 752. The procedure was later revised and deleted from the state plan in 1984. *Id.* Presently, there appears to be no complaint resolution procedure in Connecticut's state plan. *Id.*

The EHA is a comprehensive statute enacted to assist the states in providing handicapped children with a "free appropriate public education." 20 U.S.C. § 1400(c). To accomplish that goal, the EHA provides federal funding to state and local educational agencies to be used for educating handicapped children. 20 U.S.C. § 1411; *see also Quackenbush v. Johnson City School Dist.*, 716 F.2d 141, 145 (2d Cir. 1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984). Such funding is conditioned upon a state's compliance with specified procedural requirements to ensure the right to a free appropriate public education. 20 U.S.C. § 1412; *see Board of Educ. of the Hendrick Hudson Central*

*School Dist. v. Rowley*, 458 U.S. 176, 182, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982).

The procedural safeguards include, among others, notice to the parents or guardians of handicapped children of any proposed change or refusal to initiate a change in their child's education, 20 U.S.C. § 1415(b)(1)(C), and an opportunity to complain about "any matter relating to ... the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(1)(E). Parents are entitled to "an impartial due process hearing" regarding such complaints conducted by the state or local educational agency. 20 U.S.C. § 1415(b)(2). Any party aggrieved by the finding and decision reached in the due process hearing can appeal to federal or state court, which is empowered to grant appropriate relief. 20 U.S.C. § 1415(e)(2).

In addition, EDGAR, 34 C.F.R. Part 76, sets forth "an administrative mechanism for assuring that a state complies with the provisions of the EHA." *Mrs. W.*, 832 F.2d at 751. While EDGAR applies generally to various educational programs, it specifically applies to state-administered programs under the EHA. 34 C.F.R. § 76.1. States are required to adopt written CRPs for receiving and resolving any complaint that the state or a subgrantee is violating an applicable federal statute or regulation. 34 C.F.R. § 76.780. The CRP must include a 60–day time limit to conduct an on-site investigation and to resolve the complaint. 34 C.F.R. § 76.781(a). Complainants must be informed of their right to request the Secretary of Education to review any final decision. 34 C.F.R. § 76.781(c).

Plaintiffs base their § 1983 claims not on violation of the regulations implementing the CRP nor the underlying authorizing statute. Rather, they allege that the failure and refusal to investigate and resolve complaints other than in a cursory fashion constitutes a violation of the State Board's obligation to monitor and ensure compliance with the EHA by state and local educational agencies. To qualify for federal funding, State Boards must assume primary responsibility for ensuring that the educational rights of handicapped children

are not violated. *See Kruelle v. New Castle County School Dist.*, 642 F.2d 687, 696 (3d Cir.1981). Specifically, the EHA provides in part that:

> In order to qualify for assistance under this subchapter in any fiscal year, a State shall demonstrate to the Secretary that the following conditions are met:
>
> . . . .
>
> (6) The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the State, including all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency and shall meet education standards of the State educational agency....

20 U.S.C. § 1412(6).

The legislative history indicates that the committee considered the establishment of a single agency responsible for assuring that the mandates of the EHA are carried out to be of paramount importance. The legislative history provides that:

> Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many States, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. While the Committee understands that different agencies may, in fact, deliver services, the responsibility must remain in a cen-

tral agency overseeing the education of handicapped children, so that failure to deliver services or the violation of the rights of handicapped children is squarely the responsibility of one agency.

S.Rep. No. 168, 94th Cong., 1st Sess. 24, *reprinted in* 1975 U.S.Code Cong. & Ad. News 1425, 1448.

Defendants argue that 20 U.S.C. § 1412(6) does no more than require states to provide certain "assurances" to the Secretary of Education in order to qualify for federal assistance.[2] Further, they assert that the CRP is just one of several mechanisms by which the State Board monitors local board compliance with the EHA and to say that § 1412(6) requires the State Board to fulfill this responsibility through one particular method, i.e., a fully implemented CRP, stretches the language of that statute too far. They contend that § 1412(6) creates no right to a CRP which can be enforced by way of a § 1983 action.

Defendants are correct in stating that the CRP is not specified in § 1412(6) as a method of assuring compliance with the EHA. However, the Secretary of Education cited § 1412(6) as the statutory authorization for his requirement of the complaint procedure when it was originally promulgated in 45 C.F.R. § 121a.602. *See Wilson v. School Dist. No. 1, Multnomah County*, 69 Or.App. 63, 686 P.2d 385, 390 (1984); *see also Young v. Community Nutrition Inst.*, 476 U.S. 974, 981, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959 (1986) (the view of the agency charged with administering a statute is entitled to considerable deference). These regulations were subsequent-

---

**2.** "It is at least an open question whether an individual's interest in having a state provide those 'assurances' is a 'right secured' by the laws of the United States within the meaning of § 1983." *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). The statute at issue in *Pennhurst*, the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6000, *et seq.*, required each participating state to submit a state plan that "contain or be supported by assurances satisfactory to the Secretary that the human rights of all persons with developmental disabilities ... will be protected...." 42 U.S.C. § 6063(b)(5)(C).

Rather than merely conditioning federal assistance on the provision of certain assurances to the Secretary of Education, § 1412(6) places on the state the responsibility for assuring that all educational programs for handicapped children comply with the EHA requirements no matter by whom they are administered. *See also Hendrick Hudson*, 458 U.S. at 206 n. 27, 102 S.Ct. 3051 n. 27 (an appeal of an impartial due process hearing decision under § 1415(e)(2) requires the reviewing court to "satisfy itself that the state has adopted the state plan, policies, and assurances required by the Act").

ly revoked in 1980 and the present complaint resolution procedures of EDGAR were substituted at 45 C.F.R. § 100b.780 (1980), presently at 34 C.F.R. § 76.780 (1983). *See Wilson*, 686 P.2d at 390. This recodification was intended to consolidate and streamline federal regulations and to replace duplicative regulations with a single set of regulations applicable to numerous educational programs, namely EDGAR.

Under the General Provisions Concerning Education, 20 U.S.C. § 1221, *et seq.*, Congress authorized the Secretary of Education to require the state to submit a plan for monitoring compliance by local agencies with various federal educational requirements. 20 U.S.C. § 1232c(a). The Secretary may require such plan to provide (1) for periodic visits by state personnel to local programs; (2) for periodic audits of expenditures under such programs; and (3) that the state investigate and resolve all complaints received by the state relating to the administration of such programs. *Id.* Although Congress left the Secretary with discretion to determine what methods of monitoring compliance would be required in a state plan, Congress, by enacting § 1232c(a), expressed the view that the procedures listed were effective methods for monitoring compliance by local agencies with federal requirements, such as the EHA. *See* 1978 U.S.Code Cong. & Ad. News 4971, 5110 (purpose of amendment was to provide clear authority for state boards responsible for administering state operated federal programs, to monitor and enforce the requirements of federal law). Thus authorized, the Secretary adopted 34 C.F.R. §§ 76.780–76.783 and thereby required states to provide a CRP. Further, the State Board's responsibility for compliance arises from its express obligation to assure that educational programs for handicapped children within the state operate in accordance with the EHA. *See* 20 U.S.C. § 1412(6).

"[A]s the state agency responsible for ensuring that local districts comply with the EHA, 20 U.S.C. § 1412(6) ..., the

[State Board] is required to provide both 'complaint' and 'due process' hearing procedures." *Wilson*, 686 P.2d at 389, citing 34 C.F.R. § 76.780 and 20 U.S.C. § 1415. In addition, the complaint resolution procedures of EDGAR provide "an administrative mechanism for assuring" EHA compliance. *Mrs. W.*, 832 F.2d at 751.

Defendants argue that EDGAR requires a state to adopt written complaint resolution procedures, but nowhere specifically requires their implementation. Thus, they argue that the implementation of the CRP is a matter of state not federal law and cannot form the basis of a § 1983 action. *See Pennhurst State School & Hosp.*, 465 U.S. 89, 104–06, 104 S.Ct. 900, 910–11, 79 L.Ed.2d 67 (1984). However, the CRP came to be required pursuant to the EHA mandate that the State Board be responsible for assuring EHA compliance. Although the EHA does not specifically require a CRP, "it would be capricious to suppose that Congress did not expect at least an attempt to do so." *See Wilder v. City of New York*, 568 F.Supp. 1132, 1136 (E.D.N.Y.1983) (construing an alleged violation of Section 408 of the Social Security Act, 42 U.S.C. § 608, which requires states to prepare a plan for assuring that each child receives proper care, to support a damages claim under § 1983). As part of its responsibility to assure that educational programs in the state for handicapped persons are operated in accordance with the EHA, the State Board is required to provide complaint resolution procedures to address complaints of violations of federal law. *See* 20 U.S.C. § 1412(6); 34 C.F.R. § 76.780.

The State Board recognizes the CRP as an informal and inexpensive way to monitor school system compliance with the requirements of the EHA. *See* Defendants' Memorandum in Opposition at 7. Nonetheless, they argue that, should they fail to meet their responsibilities under § 1412(6), the Secretary may enforce compliance by withholding funding under § 1416.[3] Fur-

---

**3.** In essence, defendants argue that plaintiffs lack standing to assert a claim under § 1412(6). They argue that plaintiffs have no legal interest

in public enforcement such as the termination of funding. However, plaintiffs are obviously not seeking the withdrawal of funding, but are

ther, they contend that plaintiffs should not be suing them, but rather the underlying offenders, namely the Bridgeport Board of Education and the Department of Children and Youth Services. This argument ignores the fact that a fully implemented CRP obviates the unnecessary expense of such litigation and constitutes fulfillment of the State Board's responsibilities under the EHA.

Plaintiffs allege, *inter alia*, that they have submitted to the State Board complaints of repeated violations of the EHA and that the State Board refused and failed to respond to these complaints meaningfully and directly and has refused to make bona fide attempts to resolve the complaints. Plaintiffs also allege that the State Board did not provide them with an opportunity to raise their claims of a pattern and practice of systemwide EHA violations in a due process hearing pursuant to 20 U.S.C. § 1415(b)(2). Thus, they argue that, if they attempt to use the state's hearing system for procedural or systematic violations, the hearing officers will not consider such issues; and, if they attempt to use the CRP to redress such claims, the State Board will not make bona fide efforts to resolve their complaints.

In order to establish an EHA violation, plaintiffs must show more than dissatisfaction with the outcome of the complaints they filed under the CRP. Plaintiffs must show that inadequacies in the procedures or the application of the CRP constitutes a pattern and practice by the State Board of failing to meet its responsibility under the EHA to assure that local boards are in compliance with federal law. Accepting plaintiffs' allegations as true and drawing all reasonable inferences in their favor, plaintiffs' complaint states a cause of action sufficient to survive a motion for judg-

ment on the pleadings.[4] Without deciding, but finding that plaintiffs have alleged a thwarting of the purposes of the EHA by the conduct or failures of defendants as alleged, a simple denial by defendants would cause plaintiffs' assertion of rights under the EHA to go unresolved and thus cannot be a valid defense.

Accordingly, defendants' motion for judgment on the pleadings is denied.

SO ORDERED.

---

instead seeking declaratory and injunctive relief under § 1983. Further, this argument was expressly rejected by the Second Circuit when it held that a private right of action did exist under § 1983 for an alleged violation of the EHA. *See Mrs. W.,* 832 F.2d at 755.

**4.** Plaintiffs also assert that defendants' conduct violates Section 504 of the Rehabilitation Act and the due process and equal protection clauses of the fourteenth amendment. For instance,

plaintiffs allege that no hearing process is available to raise their claims of EHA violations and the CRPs have also not been available in any meaningful way. Thus, they argue that there is no due process available to determine if their EHA rights are being improperly denied. *See Robinson v. Pinderhughes,* 810 F.2d 1270, 1272–74 (4th Cir.1987); *Miener v. State of Missouri,* 800 F.2d 749, 755 (8th Cir.1986).