

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-1996

# Beth V. v. Carroll

Precedential or Non-Precedential:

Docket 95-1097

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Beth V. v. Carroll" (1996). *1996 Decisions.* Paper 161.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/161

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 95-1097
_____

BETH V., A Minor, By Her Parent and Natural Guardian,
Yvonne V.; YVONNE V.,In Her Own Right; BRANDON M., A Minor By His
Parent and Natural Guardian, Frederica M.; FREDERICA M.,
In Her Own Right; PARENTS UNION FOR PUBLIC SCHOOLS,
On Their Own Behalf And
On Behalf of All Others Similarly Situated,

Appellants

v.

DONALD M. CARROLL, JR.,
Secretary of Education, Commonwealth of Pennsylvania;
DEPARTMENT OF EDUCATION; Commonwealth of Pennsylvania;
RICHARD W. RILEY, Secretary of Education,
United States of America
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 93-cv-04418)

Argued September 15, 1995

Before:  SLOVITER, Chief Judge,
ALITO and SEITZ, Circuit Judges

(Filed June 25, 1996)
_____

Mary G. Scanlon  (Argued)
Education Law Center
Philadelphia, PA  19107

     Attorney for Appellants

Claudia M. Tesoro  (Argued)
Office of Attorney General of Pennsylvania
Philadelphia, PA  19107

     Attorney for Appellees
_____

OPINION OF THE COURT
_____

SLOVITER, Chief Judge.

     The plaintiffs-appellants are two learning-disabled
children and their mothers who, frustrated with their inability

to secure the special educational plans to which they claim they were entitled by the Commonwealth of Pennsylvania under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. 1400-91, filed complaints with the Pennsylvania Department of Education (PDE). When their complaints were inadequately addressed or unanswered by the PDE, the plaintiffs, joined by Parents Union for Public Schools, a non-profit educational advocacy organization, sought declaratory and injunctive relief by bringing suit against the PDE and the state Secretary of Education (jointly PDE), claiming that the Commonwealth had failed to comply with regulations promulgated by the United States Department of Education (DOE) governing procedures for resolution of complaints, and moved for class certification.

Although neither the PDE nor the U.S. Secretary of Education, who was also sued but has since been dismissed as a defendant, contended that plaintiffs did not have a private right of action, the district court directed briefing on that issue. Thereafter, the court, without reaching any of the substantive issues raised by the complaint, entered summary judgment against the plaintiffs on the ground, inter alia, that the plaintiffs did not have a right of action on their claim that the state had failed to maintain a timely and effective state-level complaint resolution system as required by IDEA and by the DOE regulations. Because we view the court's decision as inconsistent with the statutory language in IDEA establishing a private right of action, see 20 U.S.C. 1415(e), we will reverse and remand. We will therefore not reach the numerous other issues raised by the parties on appeal.

I.

IDEA, originally enacted in 1970 as the Education of the Handicapped Act (EHA), Pub. L. No. 91-230, 601-662, 84 Stat. 175, confers on disabled children a substantive right to a "free appropriate public education." 20 U.S.C. 1400(c); seeHonig v. Doe, 484 U.S. 305, 308-10 (1988). That free appropriate education "consists of educational instruction specially designed to meet the unique needs of the [disabled] child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." Board of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982). Under IDEA, a disabled student is entitled to an Individualized Education Plan (IEP), a specially tailored educational program detailing the student's present abilities, educational goals, and specific services designed to achieve those goals within a stated timeframe. See 20 U.S.C. 1401(a)(20).

IDEA places on the states the primary responsibility for satisfying the goals of the statute. IDEA, described by several courts as a model of "cooperative federalism," see, e.g., Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 151 (3d Cir. 1994); Town of Burlington v. Dep't of Educ., 736 F.2d 773, 783 (1st Cir. 1984), aff'd, 471 U.S. 359 (1985), authorizes federal funding for states providing the special education that the statute requires, but funding is contingent on state compliance with its array of substantive and procedural requirements, 20 U.S.C. 1412.

One of those requirements is the provision for procedural safeguards as outlined in the statute which maximize parental involvement in decisions affecting their children's education. See 20 U.S.C. 1415. Those procedures expressly include, inter alia, an opportunity for the parents or guardian of a handicapped child to examine all relevant records pertaining to the education of such child and written prior notice of proposals or refusals to initiate or change the identification, evaluation or educational placement of the child. See 1415(b)(1)(A), (C). The statute also includes among the required procedures an opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 1415(b)(1)(E). Parents or guardians have the statutory right to secure an impartial due process hearing based on such a complaint to be conducted by the state, local or intermediate educational agency. 1415(b)(2). Parties aggrieved by the resulting findings and decision are entitled to bring a civil action in either state or federal court. 1415(e)(2). The procedures specified in 1415(b) are not exclusive, as the section states at the outset that "[t]he procedures required by this section shall include, but shall not be limited to" those specified.

In addition to the procedures specified in the statute, the states must also establish written procedures for resolving a complaint filed by an organization or individual that alleges a public agency has violated a requirement of IDEA or the related regulations. The requirement to adopt certain minimum state complaint procedures is contained in regulations promulgated by the U.S. Department of Education (DOE). These regulations were initially promulgated by the DOE in 1972 under IDEA's predecessor statute, the EHA, see 45 C.F.R. 121.109 (1972), and they have since been reissued twice under other statutory authority: first in 1980, referring to 20 U.S.C. 1221e-3(a)(1), part of the General Education Provisions Act, as the enabling statute, and again in 1993, this time referring to 20 U.S.C. 2831(a), part of the Elementary and Secondary Education Act of 1965.

Although the current regulations are not in full haecverba with each of their predecessors, the current regulations, like the preceding regulations, require the state agency to have procedures for the receipt and resolution of such complaints and impose a time limit (60 days since 1980) for the state to carry out "an independent on-site investigation," if necessary, with an extension beyond the 60 calendar days, "only if exceptional circumstances exist with respect to a particular complaint." See, e.g., 300 C.F.R. 330.661 (1995); 45 C.F.R. 100b.780-.781 (1980). The current regulations not only require the state educational agency to conduct any necessary investigation of a complaint, but also require that the state's complaint resolution procedures permit complainants to submit additional information, and that the state educational agency review all relevant information and issue a written decision addressing all allegations. 34 C.F.R. 300.661 (1995). The state educational agency must also adopt, where necessary, "[p]rocedures for

effective implementation" of its final decisions, including "corrective actions to achieve compliance."   300.661(c).

At this initial stage of the plaintiff's action, the record is meager with respect to the type of complaints that are generally the subject of these complaint resolution procedures, nor do we know with any certainty to what extent they may overlap with the due process procedures, as plaintiffs' counsel stated at oral argument.  It appears to be conceded by the PDE that the DOE regulations requiring a complaint resolution system encompass at least complaints of the type of system-wide deficiencies alleged here.  Oral Argument Transcript at 30-31 (Sept. 15, 1995); seealso Mrs. W. v. Tirozzi, 832 F.2d 748 (2d Cir. 1987).  The PDE does not deny that it has the obligation to maintain such a complaint resolution system for the prompt receipt, investigation and resolution of complaints that a public agency has violated IDEA or related regulations.

We turn to the allegations of the named plaintiffs, whose situations illustrate the types of complaints that the complaint resolution procedures may encompass.  Plaintiffs Beth V. and Brandon M., both of whom have specific learning disabilities, attend school in Pennsylvania.  Beth had had an IEP devised for her, but her mother, plaintiff Yvonne V., determined during the 1991-92 school year that Beth's school was not implementing it.   Concerned that her daughter's academic progress was withering, Yvonne filed two complaints with the PDE pursuant to the complaint resolution procedures--one in April 1992 and another in February 1993.  Despite a directive by the DOE to the PDE to resolve the matter quickly, the PDE has never issued a decision and the complaints have never been resolved.

The complaint relating to Brandon M., the second child plaintiff, deals with his transfer to a different school after a year of showing academic and behavioral improvement.  His mother, plaintiff Frederica M., was given no prior notice or opportunity to object, and requested a due process hearing under  1415 of IDEA.  After three months, four such requests, and no hearing, Frederica filed a complaint with the PDE about his treatment.  She did not receive the PDE's closure report until 190 days later and, although the PDE ordered Brandon's reinstatement at his original school, it failed to order the compensatory education he requested or to address the school district's failure to provide a due process hearing.  In the meantime, Brandon failed most of his courses.

Parents Union for Public Schools, a non-profit educational advocacy organization, has filed numerous complaints with the PDE on behalf of students with disabilities and their families.  It joined the individual plaintiffs in bringing suit against the PDE "on behalf of all Pennsylvania children with disabilities, and their parents or representatives, who are unable to rectify violations of their rights under the Individuals with Disabilities Education Act."

In their district court complaint, the plaintiffs alleged that the complaints they filed with the PDE and/or its Division of Compliance had been inadequately and tardily processed.  More generally, they charged that the PDE's complaint

resolution procedures were deficient in that the PDE failed to (1) resolve over 40% of its complaints within the required period; (2) address all allegations raised in complaints; (3) adequately order or enforce corrective action; or (4) permit interested parties to submit additional evidence before issuing reports.

The plaintiffs sought declaratory and injunctive relief, urging the district court to require the PDE to adopt measures that would ensure compliance with the requirements of the regulations; submit a plan to ensure continued compliance and periodic reports; and publicize the availability and operation of its complaint procedures. They also sought compensatory educational services for Beth V. and Brandon M., and reimbursement for those educational services their parents had privately secured for them while awaiting complaint resolution. Finally, the plaintiffs requested compensatory educational services and reimbursement for all other parties who had experienced delayed resolution of "founded complaints". App. at 30–32.

The plaintiffs asserted causes of action directly under IDEA, under the complaint resolution regulations, under 42 U.S.C. 1983, and under section 504 of the Rehabilitation Act of 1973. They then moved for certification of a plaintiff class composed of Pennsylvania children, parents, and representatives who had used, or would use, the complaint resolution procedures.

The PDE stipulated to certification of the class as proposed. Nonetheless, the district court declined to rule on the class issue on the ground that the interest shared by the plaintiffs and the PDE in securing increased state funding and resources for better complaint resolution "made it no longer feasible to rely primarily on the litigants to produce and develop factual materials." Beth V. v. Carroll, 155 F.R.D. 529, 533 (E.D. Pa. 1994). The court stated that it would make an "independent determination" equipped with "more than a single perspective on key issues," id. at 534, and sua sponte appointed a special master, directing him not only to adduce facts relevant to the propriety of class certification but also to establish the controversy as one justiciable by an Article III court and to identify any third parties potentially disadvantaged by or opposed to the relief sought. Id.

The master, who completed his report in August 1994, concluded that the relief sought was broader than the district court was empowered to fashion, and recommended against class certification. He confirmed that the PDE failed to resolve one-third of the complaints within the required 60 days, and reported that the DOE's Office of Special Education Programs (OSEP) had investigated the PDE's complaint procedures in late 1993 as part of its yearly review, found them inadequate, and ordered the PDE to develop and execute a plan for fuller compliance.

The master recommended against the broad injunctive relief requested by the plaintiffs. He described that relief as approaching "direct supervisory control" by the district court over the PDE, concluded that the court's resulting role would overreach the Article III "case or controversy" requirement, and

believed that the requested intervention was inconsistent with the U.S. Education Secretary's primary authority over--and ongoing supervision of--the PDE's compliance with IDEA. He recommended that the district court limit its adjudication to particular harms to individual plaintiffs, and that it therefore decline class certification. App. at 112-34. In their response to the master's report, the plaintiffs included objections not only to the substance of the report but also to the appointment of the master for the purposes directed. That issue is not raised by the plaintiffs on appeal because the master's report does not go to the issue of whether plaintiffs have a right of action
.

The plaintiffs then moved for summary judgment. The district court, again acting sua sponte, requested briefing on the existence of a private right of action to seek enforcement of the complaint resolution procedures. Beth V. v. Carroll, No. 93-4418, 1994 WL 594267 (E.D. Pa. Oct. 25, 1994). Shortly after submission of the briefs and without oral argument, the court concluded that such a right of action did not exist, denied the plaintiffs' motion for summary judgment, and instead entered summary judgment for the PDE on the plaintiffs' claims under IDEA and 1983. Beth V. v. Carroll, 876 F. Supp. 1415 (E.D. Pa. 1995). The district court stated that it "decline[d] to imply a right of action in favor of private parties such as plaintiffs directly under the regulations at issue," id. at 1419; see id. at 1426-32, and determined that "in light of the current efforts of the United States Secretary of Education . . . to resolve the very problems that are the impetus for this lawsuit, plaintiffs are foreclosed from enforcing those regulations under 42 U.S.C. 1983," id. at 1419; see id. at 1432-36. Thus, the district court disposed of the plaintiffs' claims that they had an implied right of action as well as an action under 1983, but gave no specific attention to the plaintiffs' invocation (albeit in a somewhat oblique manner) of an express right of action under 1415 of IDEA. The court then denied as moot the motion for class certification. Id. at 1423. After plaintiffs moved to withdraw their Rehabilitation Act claim, the court dismissed it, seeAddendum II, and plaintiffs appealed.

The district court had jurisdiction under 28 U.S.C. 1331 and 1343, and we have jurisdiction pursuant to 28 U.S.C. 1291.

                                  II.

The ground on which we decide this appeal requires only that we consider whether the plaintiffs can rely on the express right of action contained in 1415 of IDEA. Because the plaintiffs were blocked at the inception of their action, the district court never considered the merits of their claims. The issue of the plaintiffs' right to sue under IDEA based on a claim that the state has failed to implement DOE's regulations for a complaint resolution procedure is an important one in the effectuation of the substantive rights established under IDEA. Thus, the fact that the district court gave the plaintiffs leave to refile their 1983 claim in the future is irrelevant to our

review of its decision that the plaintiffs do not have a right of action under IDEA itself.  As the question is one of statutory construction, our review is plenary.  Doherty v. Teamsters Pension Trust Fund, 16 F.3d 1386, 1389 (3d Cir. 1994).

A.

The express language of IDEA gives disabled children and their parents substantive and procedural rights as well as the right to seek judicial enforcement of those rights in a federal or state court.  Section 1415 of the Act provides:

(a) Establishment and maintenance

Any State educational agency . . . which receives assistance under this subchapter shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units.

(b) Required procedures; hearing

(1) The procedures required by this section shall include, but shall not be limited to --

. . . .

(E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency . . . .

(c) Review of local decision by State educational agency

If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency or an intermediate educational unit, any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing.  The

officer conducting such review shall make an independent decision upon completion of such review.

. . . .

(e) Civil action; jurisdiction

. . . .

(2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.  In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

. . . .

20 U.S.C.  1415 (emphasis added).

Thus, if the plaintiffs' claim that the PDE failed to implement or maintain an effective complaint resolution system to investigate and resolve complaints that there have been violations of IDEA or related regulations is one "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" as specified in 1415(b)(1)(E), the language of  1415(e)(2) authorizing filing of a civil action plainly encompasses this lawsuit.  Nothing in the district court's opinion addressed why that express language fails to cover these plaintiffs and their claim.

The PDE argues that the plaintiffs' claim falls outside the subject matter limitation of  1415(b)(1)(E) because it is "about the sufficiency of a purely regulatory procedure" and does not involve "anyone's educational program."  Brief of Appellees at 12.  The argument is unpersuasive for several reasons.

First, the attempt by the plaintiffs to secure redress by complaint to the PDE arises out of the inability of the children involved to secure a satisfactory education and thus directly implicates "the provision of a free appropriate public education to such child" as required by  1415(b)(1)(E).

Second, even applying the PDE's stringently literal approach, we note that the statutory language in  1415(b)(1)(E) refers to the opportunity to submit not only a complaint that directly addresses "the provision of a free appropriate public

education," but also one "with respect to any matter relating to" such provision. Thus, the claim that is the subject of the judicial action authorized under 1415(e)(2) is broader than suggested by the PDE.

Third, the procedural safeguards undergirding the IDEA scheme lie at the core of 1415(e)(2) and its authorization of suit. See Rowley, 458 U.S. at 205-06 ("It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, as it did upon the measurement of the resulting IEP against a substantive standard.") (citation omitted); Murphy v. Timberlane Regional Sch. Dist., 22 F.3d 1186, 1196 (1st Cir.), cert. denied, 115 S.Ct. 484 (1994) ("It is plainly true, of course . . . that not every procedural irregularity gives rise to liability under the IDEA. Nevertheless, 'procedural inadequacies [that have] compromised the pupil's right to an appropriate education . . . or caused a deprivation of educational benefits' are the stuff of successful IDEA actions.") (alteration in original) (citations omitted); seealso W.G. v. Board of Trustees, 960 F.2d 1479, 1484 (9th Cir. 1992) ("[P]rocedural inadequacies that result in the loss of educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process" give rise to liability under IDEA's predecessor statute, EHA); Mrs. C. v. Wheaton, 916 F.2d 69, 72 (2d Cir. 1990) (a party may "seek redress in the federal courts for the state's failure to provide any of the EHA procedural safeguards."); Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1095 (1st Cir. 1989) (both substantive and procedural violations of EHA fall within 1415(b)(1)(E) "matters relating to"); Muth v. Central Bucks Sch. Dist., 839 F.2d 113, 120-26 (3d Cir. 1988), rev'd on other grounds sub nom. Delmuth v. Muth, 491 U.S. 223 (1989) (entertaining and sustaining 1415 claim that Pennsylvania's due process procedures deviated from requirements of EHA).

Fourth, the PDE's contention that the plaintiffs' claims involve only the adequacy of a regulatory procedure--and really involve no one's educational program--suggests that the plaintiffs are challenging only the abstract sufficiency of the PDE's complaint procedures with little connection to any underlying substantive educational concerns. However, the PDE never suggests that the plaintiffs assert only a generalized grievance--enforcing the law for the law's sake. Indeed, the PDE conceded at oral argument that there was no "standing problem" here. Oral Argument Transcript at 34. The immediacy of the issue to Beth V. and Brandon M. and their parents is evident from the treatment they received in their attempts to effectuate the substantive rights accorded them under the statute.

Fifth, the complaint resolution procedures were evidently designed by the DOE to afford persons such as the plaintiffs an opportunity to bring to the attention of a state agency claims of non-compliance with IDEA or related regulations without, as the complaint alleges, "having to resort to costly legal actions" for prompt and expeditious correction. Indeed,

the PDE apparently has promulgated written procedures for a complaint resolution system under IDEA, and the Master's Report itself states:

> Federal regulations require that states receiving federal money under the IDEA should investigate, review and decide individual complaints within sixty (60) calendar days. See 34 CFR  300.661 (1993).  The DOC's Complaint Management System accepts this sixty day requirement as the applicable timeline (subject to extension where appropriate).  See DOC Procedures in Appendix Exhibit "B" at 11.

App. at 113-14.  If the PDE's position is sustained, those children and parents who are confronted with pervasive and entrenched obstacles to securing an adequate education would be precluded from seeking judicial relief in their effort to enforce the complaint resolution system which provides the opportunity to bring violations of IDEA to the attention of the state agency.

Finally, we note the coherence of purpose between the complaint resolution procedures and the IDEA scheme.  The nexus between the complaint resolution system and IDEA's mandate is evident by reference to the statutory language of IDEA.  Section 1412(6) of IDEA imposes upon the state agency a broad obligation as follows:

> The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for children with disabilities within the State, including all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for children with disabilities in the State educational agency and shall meet education standards of the State educational agency.

20 U.S.C.  1412(6).

The PDE suggests that this mandate of  1412(6) is a limited one, requiring that states assure only that "the requirements of this subchapter are carried out."  The PDE argues that because "this subchapter" includes only  1411 through 1420 of IDEA,  1412(6) cannot be read to command compliance with nonstatutory complaint procedures.  This argument neglects the fact that the relevant "subchapter" also includes  1412(1), a provision that requires that each "state ha[ve] in effect a policy that assures all children with disabilities the right to a free appropriate public education."  20 U.S.C.  1412(1) (1995).

The "purpose" clause of the DOE regulations in their current form is as follows:

> To ensure that all children with disabilities have available to them a free appropriate public education

that includes special education and related services to meet their unique needs [and] [t]o ensure that the rights of children with disabilities and their parents are protected . . . .

34 C.F.R. 300.1(a)-(b) (1995).

This language is strikingly parallel with that of IDEA's 1412(1), and makes clear the link between the need to maintain an operational complaint resolution system, the requirement of 1412(1) of IDEA that states maintain policies assuring the right to a free appropriate public education, and the mandate of 1412(6) of IDEA that the state educational agency ensure execution and compliance of these policies.

The only other appellate decision of which we are aware to consider a comparable issue upheld the plaintiffs' right to sue on allegations that their state had systematically failed to implement the regulatory complaint procedures of 34 C.F.R. 300.660-.662. See Mrs. W. v. Tirozzi, 832 F.2d 748, 759 (2d Cir. 1987) (permitting plaintiffs "to pursue claimed EHA violations" through suit under 42 U.S.C. 1983 where "the pleadings indicate that defendants refused to consider and resolve complaints of system-wide violations of the EHA"). The Second Circuit reached that conclusion after a comprehensive review of the legislative history accompanying 1415(f) of the EHA, because it found that Congress' intent to permit private actions to enforce the EHA's provisions was clear. Id. at 754-55.

On remand, the district court denied the defendants' renewed motion for judgment on the pleadings, reasoning that inasmuch as the state agency has the statutory responsibility to assure that educational programs in the state for disabled persons are operated in accordance with the applicable statute, the state agency is required to provide complaint resolution procedures to address complaints of violations of federal law. Mrs. W. v. Tirozzi, 706 Supp. 164, 168 (D. Conn. 1989). That court further observed that the plaintiffs' claim asserted not simply a "violation of the [complaint resolution procedures] nor the underlying authorizing statute," but rather a "violation of the State Board's obligation to monitor and ensure compliance with the EHA by state and local educational agencies," a statutory obligation. Id. at 166.

We note furthermore that our holding is consistent with Congress' view that private suits are integral to enforcement of IDEA. Congress' reliance on a private action as one of the principal enforcement mechanisms of the rights guaranteed under IDEA is demonstrated by its prompt enactment of a 1989 amendment to IDEA which makes express its abrogation of the states' Eleventh Amendment immunity from suit. See 20 U.S.C. 1403 (overturning the decision in Dellmuth v. Muth, 491 U.S. 223 (1989)).

Consistent with the palpable nexus between the provision of a free appropriate public education mandated by IDEA and the DOE regulations requiring procedures for bringing complaints of violations of IDEA and related regulations to the

attention of the state agency, we hold that the plaintiffs, who allege that the PDE has consistently failed to investigate and timely resolve such complaints, enjoy an express right of action under 1415 of IDEA. It is therefore unnecessary for us to consider the plaintiffs' contention that they also have an implied right of action under IDEA or may sue under 42 U.S.C. 1983.

B.

Admittedly, the plaintiffs failed to meet the requirement of 1415 that complainants filing suit must first secure a due process hearing and exhaust opportunity for administrative appeal. 20 U.S.C. 1415(b)(2) & (e)(2); seeKomninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994). The plaintiffs contend that they should be excused from the administrative exhaustion requirement because they fall within one of the exceptions recognized by this court.

In Komninos, where we addressed exhaustion specifically in the IDEA 1415 context, we stated that claimants may "bypass the administrative process" (1) "where exhaustion would be futile or inadequate," id. (quoting Honig, 484 U.S. at 327); see alsoH.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985) [hereinafter 1985 House Report] (no exhaustion required where "it would be futile to use the due process procedures"); (2) "where the issue presented is purely a legal question," Komninos, 13 F.3d at 778 (citing Lester H., 916 F.2d at 869-70); (3) "where the administrative agency cannot grant relief," id.; see also 1995 House Report at 7 (no exhaustion required where "it is improbable that adequate relief can be obtained by pursuing administrative remedies"); and (4) "when exhaustion would work 'severe or irreparable harm' upon a litigant," Komninos, 13 F.3d at 778 (quoting Christopher W., 877 F.2d at 1097).

In the IDEA 1415 context, plaintiffs may thus be excused from the pursuit of administrative remedies where they allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process. See Mrs. W., 832 F.2d at 756-57 (waiving IDEA exhaustion requirement for plaintiffs who challenged adequacy of state's complaint resolution procedures under 42 U.S.C. 1983 where plaintiffs alleged that violations were "unable to be addressed at the due process hearings provided in Connecticut" and that the hearing officer lacked the authority to provide system-wide relief); 1985 House Report at 7 (no exhaustion required where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law"). To the extent that this exception merely flows implicitly from, or is in fact subsumed by, the futility and no-administrative-relief exceptions, we view it as among traditionally respected bases for a waiver of 1415's exhaustion requirement.

The plaintiffs' claim in this case is, in essence, that the safeguards to ensure timely and adequate resolution of complaints that were the object of the DOE regulations requiring complaint resolution procedures have failed on a system-wide basis and thus the sufficiency of the state's complaint

procedures itself must be challenged.  Their claim may contain elements of one or more of the recognized exceptions to exhaustion.  However, we do not decide that issue in the first instance.  Because the district court failed to address directly the plaintiffs' assertion of an express right of action under 1415, that court never discussed whether the plaintiffs may qualify for a waiver of  1415's exhaustion requirement.  We are certainly not prepared to say they do not.  Instead, we will remand the case to the district court to determine, inter alia, whether the plaintiffs need exhaust the administrative remedies specified in  1415.

### III.

In light of the foregoing discussion, we will reverse the district court's grant of summary judgment against the plaintiffs' direct IDEA claim under  1415, and remand for further proceedings, including reconsideration of the class certification issue.  In doing so we do not decide what relief, if any, the plaintiffs may be entitled to at this time should they prove, or the defendants concede, the relevant allegations. The plaintiffs originally requested injunctive relief, a declaratory judgment and compensatory education.  The district court is free to consider whether the situation at the present time has substantially altered the need for any of this relief.