Dale A. LUCHT and Terry
E. Lucht, Plaintiffs,

v.

MOLALLA RIVER SCHOOL
DISTRICT, Defendant.

No. CV–98–1375–ST.

United States District Court,
D. Oregon.

June 25, 1999.

Dana R. Taylor, Hagen Dye, Hirschy & Dilorenzo, PC, Portland, OR, for plaintiffs.

Nancy Hungerford, Andrea L. Hungerford, Hungerford Law Firm, West Linn, OR, for defendant.

## ORDER

PANNER, District Judge.

Magistrate Judge Janice M. Stewart filed her Findings and Recommendation on April 23, 1999. The matter is now before me pursuant to 28 U.S.C.§ 636(b)(1)(B) and Fed. R. Civ. P. 72(b). When either party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636 (b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981), *cert. denied*, 455 U.S. 920 (1982).

Defendant filed timely objections. I have, therefore, given the file of this case a *de novo* review. I ADOPT Magistrate Judge Stewart's Findings and Recommendation. Plaintiff's motion for partial summary judgment (docket #6) is granted. Defendant's motion for summary judgment (docket #8) is denied. Judgment is entered in plaintiff's favor in the sum of $3,819.92.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATIONS

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

Plaintiffs are the parents of D.L., a child with a disability entitled to special education benefits under the Individuals with Disabilities Education Act, 20 USC §§ 1400 *et seq* ("IDEA"). They bring this action against defendant, Molalla River School District ("District"), to recover attorney fees and costs in the sum of $3,819.92 incurred in connection with Individualized Education Plan meetings convened as a result of an Order issued by the Oregon State Superintendent of Public Instruction ("Superintendent"). Plaintiffs have moved for partial summary judgment on the issue of the District's liability (docket # 6) and, in response, the District has

filed a cross-motion for summary judgment (docket # 8). For the reasons set forth below, this court recommends that plaintiff's motion be granted and the District's motion be denied.

### STANDARDS

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The parties agree that the relevant material facts are undisputed and that summary judgment is an appropriate mechanism for resolving their legal dispute.

### UNDISPUTED FACTS

D.L. is an autistic child who resides within the District and is entitled to special education benefits under the IDEA. Pursuant to OAR 581–001–0010, Oregon's Complaint Resolution Procedure ("CRP") under the IDEA, plaintiffs filed a complaint and an amended complaint with the Superintendent, alleging that the District failed to properly identify D.L.'s disability and failed to provide him with a free appropriate public education ("FAPE"). No attorney represented plaintiffs at that time.

The Superintendent conducted an investigation and issued a written decision ("Order") dated August 17, 1998, stating that substantial evidence supported many of plaintiffs' allegations. The Order included a Corrective Action Plan which, among other things, required the District to properly train its staff on reviewing and writing Individualized Education Plans ("IEP") and to submit a revised IEP for D.L.'s 1998–99 school year. An IEP is a written plan developed by the local education agency in conjunction with the parents and teachers to provide specially designed instruction to meet the unique needs of a disabled student. 20 USC § 1401(11). An IEP can be revised only at a meeting of an IEP Team, which includes the student's parents as members. 20 USC § 1414(d)(1)(B)(i) & (d)(4)(A)(ii).

Pursuant to the Order, the District convened an IEP meeting with plaintiffs on September 10, 1998, which was continued to September 17, September 25, and November 6, 1998. Plaintiffs were represented by their attorney at these four meetings and, as a result, incurred attorney fees of $3,819.92. Plaintiffs have demanded that the District reimburse them for these attorney fees, but the District has refused.

### DISCUSSION

#### I.  IDEA Statutory Framework

In 1970, Congress enacted the Education for All Handicapped Children Act ("EHA") to ensure that the states provide all disabled children with a FAPE. Pub L No 91–230, §§ 601–602, 84 Stat 175; 20 USC § 1400(c). Known since 1990 as the IDEA, see Education of the Handicapped Act Amendments of 1990, Pub L No 101–476, § 901(a)(1), 104 Stat 1103, 1141–42 (1990) (revising short title), the statute conditions the granting of federal funds on compliance by the states with certain procedural requirements.[1] 20 USC §§ 1412–1413.

Congress reauthorized and substantially amended the IDEA in June 1997. See Individuals with Disabilities Education Act Amendments of 1997, Pub L No 105–17, 111 Stat 37. The 1997 amendments took effect July 1, 1998. Because all relevant action in this case occurred after July 1, 1998, the changes located at Pub L No 105–17, 111 Stat 37, 88–89, apply to this case.

Among its many provisions, the IDEA authorizes the court to award attorney fees to the parents of a child with a disability as follows:

---

[1]  Because the EHA remains the foundation for the IDEA, cases decided under the EHA have maintained their precedential value for interpretations of the IDEA. See Straube v. Florida Union Free Sch. Dist., 801 F.Supp. 1164, 1169 n.1 (S.D.N.Y.1992), citing Heldman v. Sobol, 962 F.2d 148, 150 n.1 (2nd Cir.1992).

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 USC § 1415(i)(3)(B) ("subsection (B)").[2]

However, the IDEA expressly prohibits an award of attorney fees in two circumstances. One of those circumstances, added by amendment to the IDEA in 1997, underlies the dispute between the parties in this case. That circumstance prohibits an award of attorney fees "relating to any meeting of the IEP Team unless such meeting is convened as a result of an *administrative proceeding* or judicial action." 20 USC § 1415(i)(3)(D)(ii) ("subsection (D)(ii)") (emphasis added).

Plaintiffs invoked Oregon's CRP and prevailed in part as set forth in the Order. As a result of the Order, the District convened IEP meetings. Plaintiffs contend that the IEP meetings were "convened as a result of an administrative proceeding," namely the CRP. Therefore, pursuant to subsection (D)(ii), plaintiffs assert that they may recover their attorney fees incurred at those IEP meetings. The District counters that the CRP is not an "administrative proceeding," and that even if it is, plaintiffs were not the prevailing party because the CRP was completed before they hired an attorney.

## II. Is the CRP an "Administrative Proceeding"?

The parties dispute whether the CRP is an "administrative proceeding" as that term is used in the subsection (D)(ii) added by Congress in 1997 to the IDEA. If it is not, then plaintiffs are prohibited from recovering attorney fees relating to any IEP meeting convened as a result of the CRP.

The District interprets the term "administrative proceeding" in subsection (D)(ii)

to mean only due process hearings held in accordance with § 1415(f) and not the resolution of a complaint pursuant to a CRP. Plaintiffs, on the other hand, interpret the term "administrative proceeding" to include a CRP.

■ Neither the IDEA nor the state Administrative Procedures Act contain a clear and unambiguous definition of "administrative proceeding" in subsection (D)(ii). Although the broader term "proceeding" is used in subsection (B), the IDEA also fails to define that term. Nevertheless, for the reasons discussed below, this court concludes that these terms include the CRP.

### A. § 1415

■ Although the IDEA does not expressly reference any "proceeding" or "administrative proceeding," § 1415, entitled "Procedural Safeguards," requires states "to establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of [FAPE] by such agencies." § 1415(a). The types of procedures "required by this section shall include" those listed in § 1415(b). Those procedures are access to educational records and the opportunity to obtain an independent educational evaluation, § 1415(b)(1); protection of the rights of a child whose parents are unknown, § 1415(b)(2); prior written notice to the parents in their native language of any proposals or refusals to change an educational placement, § 1415(b)(3) & (4) (the contents of the notice are set forth in § 1415(c) & (d)); an opportunity for mediation, § 1415(b)(5); "an opportunity to present complaints," § 1415(b)(6); notice procedures for parents, § 1415(b)(7); and a model form for the complaint, § 1415(b)(8).

How states are to resolve such complaints presented pursuant to § 1415(b)(6)

---

**2.** Congress originally enacted the attorney fee provision in 1986 as an amendment to § 615(e)(4) of the EHA, 20 USC

§ 1415(e)(4)(B). Handicapped Children's Protection Act of 1986, Pub L No 99–372, 100 Stat 796 (1986).

is not specified. However, the IDEA does require that "[w]henever a complaint has been received under subsection (b)(6)," the parents "shall have an opportunity for an impartial due process hearing." § 1415(f). The hearing is held by an impartial hearings officer and must result in a final decision within 45 days after filing the request for a hearing. § 1415(f)(3); 34 CFR § 300.512(a). Parents have the right to be accompanied and advised by counsel; to present evidence and confront, cross-examine, and compel the attendance of witnesses; to prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five days before the hearing; to obtain a written or electronic verbatim record of the hearing; and to obtain written findings of fact and decisions. § 1415(h); 34 CFR § 300.508(a). Parents may appeal an adverse decision by a local educational agency to the state educational agency ("SEA") for an impartial review. § 1415(g). If they lose before the SEA, then they may file a civil action in state or federal court. § 1415(i)(1)(A) & (2)(A).

Although not specifically authorized by § 1415, the implementing regulations of the IDEA establish another administrative "procedure" for resolving complaints under subsection (b)(6), commonly referred to as the CRP, as an alternative to an impartial due process hearing. Congress authorized the Secretary of Education to require states to submit plans for monitoring compliance by local agencies with various federal educational requirements. 20 USC § 1232c(a). Such plans may provide that the state investigate and resolve all complaints received by the state relating to the administration of such programs. *Id.* Thus authorized, the Secretary adopted regulations requiring states to provide a CRP in order to bring claims of non-compliance with the IDEA to the attention of

the SEA for prompt and expeditious correction.[3] Although the IDEA does not specifically require a CRP, "it would be capricious to suppose that Congress did not expect at least an attempt to do so." *Mrs. W. v. Tirozzi,* 706 F.Supp. 164, 168 (D.Conn.1989).

According to the regulations, states must adopt written procedures for receiving complaints regarding alleged violations of the IDEA by state or local agencies. 34 CFR §§ 300.660–.662. An organization or individual may file a signed written complaint describing the violation and the facts supporting the violation. 34 CFR § 300.662. The SEA determines whether an investigation of a complaint is warranted and, if so, carries out an independent investigation. 34 CFR § 300.661(a)(1). The complainant has the opportunity to submit additional information. 34 CFR § 300.661(a)(2). The SEA must review all relevant information and then issue a written decision. 34 CFR § 300.661(a)(3) & (4). This process must be completed in 60 days, with extensions granted only for exceptional circumstances. 34 CFR § 300.661(b). A party can appeal only by requesting the United States Secretary of Education to review the SEA's decision. 34 CFR § 300.661(d). Oregon has adopted a CRP consistent with the IDEA's implementing regulations. OAR 581–001–0010.

A CRP differs from a due process hearing in that the complainant does not have the rights of confrontation, cross-examination, or compulsory process. As a result, a complainant generally is not represented by counsel during the CRP.

Upon filing of a complaint pursuant to § 1415(b)(6), parents have the choice of either requesting a CRP or a due process hearing. It is not certain to what extent the CRP precedes, overlaps, or even dis-

---

**3.** The Department of Education initially promulgated these regulations in 1972 under the EHA. *See* 45 CFR § 121.109 (1972). They have been reissued twice since then under other statutory authority: first in 1980, refer-

ring to 20 USC § 1221e–3(a)(1), part of the General Education Provisions Act, and again in 1992, referring to 20 USC § 2831(a), part of the Elementary and Secondary Education Act of 1965, as the enabling statute.

places a due process hearing. Apparently a CRP may proceed concurrently with, but independently of, a due process hearing, given that the Superintendent may delay a CRP investigation "if a due process hearing on the same issues is pending or filed." OAR 581–001–0010.[4]

The parties disagree as to whether a complainant who chooses the CRP in Oregon is thereafter excluded from obtaining a due process hearing. Plaintiffs contend that a decision pursuant to the CRP in Oregon is considered final and *res judicata*, pointing to a hearing officer's decision which precluded relitigation of claims earlier pursued in a CRP. *In the Matter of M.S. & Sherwood Sch. Dist.*, Case No. DP 97–106 before the State Superintendent of Public Instruction, Order of Dismissal, pp. 5–6 (May 14, 1997). The District disagrees, relying on policy statements by the Oregon Department of Education ("ODE") in its Memorandum No. 34–1997–98 dated September 5, 1997, and by the United States Department of Education in its letter dated July 28, 1995, to the Illinois State Board of Education interpreting 34 CFR §§ 300.506–515 and 300.660–662. According to those policy statements, a party aggrieved by a SEA decision following a complaint investigation under a state's CRP is permitted to pursue a due process hearing on the same issues, with that hearing decision prevailing over a conflicting SEA decision. In addition to these policy statements, the District's position also is supported by the case law.

Although the Ninth Circuit has not addressed this issue, other circuits have implied that a due process hearing may be held after a CRP on the same issues. This implication derives from the requirement of exhausting administrative remedies before initiating court action to enforce the EHA. In *Mrs. W. v. Tirozzi*, 832 F.2d 748

(2nd Cir.1987), the parents pursued EHA violations arising from the state's systematic failure to implement the CRP by filing suit in court under 42 USC § 1983 without first requesting a due process hearing. "In light of the complete absence of a statutory directive or decisional law requiring CRP exhaustion prior to commencing an action under § 1415(e) or § 1983," the court relied on general exhaustion principles under § 1983 and found that exhaustion of EHA administrative remedies is ordinarily required, but waived exhaustion in that case. *Id* at 758; *accord Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88 (3rd Cir.1996) (allowing express right of action under the IDEA to challenge a SEA's failure to investigate and timely resolve CRP complaints, provided that the exhaustion requirement is met or waived). Similarly in *Christopher v. Portsmouth Sch. Comm.*, 877 F.2d 1089 (2nd Cir.1989), the court dismissed a claim for relief under the EHA for failure to exhaust administrative remedies when the claimant filed suit in court under the EHA without pursuing any other administrative remedies after filing a CRP complaint.

If a due process hearing is ordinarily required to exhaust administrative remedies arising from an adverse CRP prior to filing a court action under the IDEA, then *ipso facto*, a complainant has the right to a due process hearing after unsuccessfully pursuing the CRP option. Therefore, a CRP is a process that may precede, but does not foreclose, a due process hearing

### B. *Subsection (B)*

To determine when parents are entitled to recover attorney fees, it is necessary to analyze the entire IDEA attorney fee provision. As amended in 1997, that provision, § 1415(i)(3), contains seven subsections.[5]

---

4. Oregon's prior regulations excluded from the CRP any allegations that could be resolved through an impartial due process hearing, including disagreements with an IEP. *Laughlin v. Sch. Dist. No. 1*, 69 Or.App. 63, 68, 686 P.2d 385, 388–89 (1984).

5. The attorney fee provision is set forth in full in the Appendix.

Subsection (A) grants jurisdiction to the federal district courts over "actions brought under this section without regard to the amount in controversy." Subsection (B) specifies when a court may award attorney fees, namely "[i]n any action or proceeding brought under this section" to the "parents of a child with a disability who is the prevailing party." Subsection (C) limits the amount of attorney fees by requiring that it be based on "rates prevailing in the community" without a bonus or multiplier. Subsection (D) prohibits attorney fees for certain services, including fees "relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action." Subsection (E) is an exception to subsection (D) not applicable here. And finally, subsection (F) requires a reduction in attorney fees in certain circumstances not applicable here, to which subsection (G) is an exception.

Therefore, before a court can even consider whether attorney fees may be awarded to parents for certain services under subsection (D)(ii), including attendance at IEP meetings, it must first determine whether attorney fees may be awarded at all under subsection (B). If attorney fees may be awarded under subsection (B), then the court must determine if they are recoverable under subsection (D)(ii). But if fees may not be awarded under subsection (B), then a court need never determine whether they are recoverable under subsection (D)(ii).

Attorney fees incurred in a due process hearing may be awarded under subsection (B). *Barlow–Gresham Union High Sch. Dist. No. 2 v. Mitchell*, 940 F.2d 1280, 1284–85 (9th Cir.1991); *McSomebodies v. Burlingame Elementary Sch. Dist.*, 897 F.2d 974, 975 (9th Cir.1989). The issue presented by this case is whether subsection (B) also permits an award of attorney fees incurred in a CRP as a "proceeding" brought under § 1415.

■ "In construing a statute in a case of first impression, we look to the traditional signposts of statutory construction: first, the language of the statute itself; second, its legislative history; and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency." *Funbus Sys., Inc. v. California Pub. Util. Comm'n*, 801 F.2d 1120, 1125–26 (9th Cir.1986) (citation omitted); *see Washington State Dep't of Game v. I.C.C.*, 829 F.2d 877, 879 (9th Cir.1987).

■ The critical first step of the process is to apply the plain meaning rule. That rule requires that when examining statutory language, the plain meaning of the words used is controlling, absent a clearly expressed legislative intention to the contrary. *Powell v. Tucson Air Museum Found. of Pima County*, 771 F.2d 1309, 1311 (9th Cir.1985). A fundamental canon of statutory construction states that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, and common meaning. If the statutory language is clear and unambiguous, "that language must ordinarily be regarded as conclusive," *North Dakota v. United States*, 460 U.S. 300, 312, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983), for there is a "strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432, n.12, 107 S.Ct. 1207, 1213, n.12, 94 L.Ed.2d 434 (1987). When the language is plain, no further construction of a statute is required, for there is nothing to construe. *See id* at 445, n.29, 107 S.Ct. at 1220, n. 29. A statute's title may be helpful in interpreting ambiguities in the language of a statute. *Russ v. Wilkins*, 624 F.2d 914, 922 (9th Cir.1980), *cert denied*, 451 U.S. 908, 101 S.Ct. 1976, 68 L.Ed.2d 296 (1981).

■ The problem with subsection (B) is its ambiguity. It is difficult to discern what is meant by "any action or proceeding brought under this section." It certainly encompasses any "action or proceeding brought under" any subsection of § 1415, including § 1415(b). However, as

noted above, § 1415(b) refers only to "procedures," not proceedings, and does not specifically include or exclude a CRP as one of the specified "procedures." Instead, the CRP is a "procedure" created by the IDEA regulations pursuant to congressional authority for presenting and resolving complaints under § 1415(b)(6).

At least one court has read subsection (B) to encompass a CRP. *Upper Valley Ass'n for Handicapped Citizens v. Blue Mountain Union Sch. Dist. No. 21,* 973 F.Supp. 429, 435 (D.Vt.1997). However, that case construed the version of § 1415(b) in effect prior to the 1997 amendments. The prior version of § 1415(b) stated that "[t]he procedures required by this section shall include, but not be limited to" those specifically listed. That language was non-exhaustive and easily could be construed to include a CRP in addition to due process hearings. In contrast, the 1997 amendments, which this court must construe, changed the numbering of the subsections, added new subsections, placed due process hearings into a new subsection, and deleted the words "but not limited to" in § 1415(b). These changes provide substantial linguistic play in the statutory joints. Thus, the wording of subsection (B) is sufficiently ambiguous that it is appropriate to turn to the legislative history to discern the legislative intent.

Unfortunately, the legislative history is sparse concerning the proper interpretation of the term "proceeding" in subsection (B). When adding the attorney fee provision in 1986, Congress clearly intended that it be interpreted consistent with the fee provisions under 42 USC § 1988 and Title VII of the Civil Rights Act of 1964, 42 USC § 2000e. *Abu–Sahyun v. Palo Alto Unified Sch. Dist.,* 843 F.2d 1250, 1252 (9th Cir.1988). As the Senate Committee explained, its substitute bill would:

> allow the Court, but not the hearing officer, to award fees for time spent by counsel in mandatory EHA administrative proceedings. This is consistent with the committee's position that handicapped children should be provided fee awards on a basis similar to other fee shifting statutes when securing the rights guaranteed to them by the EHA.

S REP No 99–112 at 14 (1986), reprinted in 1986 USCCAN 1798, 1804.

The earlier House Committee Report explains that the provision now referred to as subsection (B) authorizes an award of attorney fees to "the prevailing party in an action or proceeding (a due process hearing or a state level review) brought under" the EHA. H REP No 99–296 at 5 (1985). In effect, these explanations define "action" as a judicial proceeding and "proceeding" as a "mandatory EHA administrative proceeding," including a "due process hearing or a state level review." As explained by the Seventh Circuit when construing subsection (B) to include services rendered in a due process hearing:

> While the committee's gloss does considerable violence to the statutory language ("action or proceeding brought under this subsection"), to reject its gloss would leave unexplained why the provision reads "action or proceeding" rather than just "action" or just "proceeding," the implication being that there may be, consistent with the House's committee report, two different types of process to which the provision applies.

*Brown v. Griggsville Community Unit Sch. Dist. No. 4,* 12 F.3d 681, 683 (7th Cir.1993).

The question then is whether a CRP is yet another type of process akin to either a "mandatory EHA administrative proceeding" or a "state level review" for which attorney fees are allowed. Those terms clearly encompass due process hearings which are mandatory administrative proceedings subject to state level review prior to filing a court action. By failing to specifically state that it was including or excluding attorney fees for the CRP, it appears that Congress simply forgot about

the existence of the CRP when enacting subsection (B) in 1985.

Congress also neglected the CRP when enacting the 1997 amendments, but did consider attorney fees in the context of yet another type of dispute resolution procedure. Among other purposes, the 1997 amendments encourage early resolution of IDEA disputes by requiring that states implement and establish procedures allowing parties involved in disputes under subsection (b)(6) "to resolve such disputes through a mediation process." § 1415(e). The mediation process must be available whenever a due process hearing is requested and is voluntary. § 1415(e)(1) & (2)(A)(i). In addition, the state must pay the "cost of the mediation process." § 1415(2)(D). In deference to "individual State procedures with regard to attorney use in mediation," Congress declined to either prohibit or require attorneys in mediation. H R REP No 105–95 at 106 (1997), *reprinted* in 1997 USCCAN 78, 104.

Therefore, Congress anticipated that attorneys may participate in a mediation and was not entirely silent on the subject of attorney fees in that regard. In the same subsection (D)(ii) barring attorney fees for IEP Team meetings unless convened as a result of an administrative proceeding, Congress also bars attorney fees "at the discretion of the State, for a mediation described in subsection (e) of this section that is conducted *prior to* the filing of a complaint under subsection (b)(6) or (k) of this section." This language is hardly a model of draftsmanship, but seems to mean that attorney fees may not be awarded for a mediation conducted before the filing of a complaint without the consent of the state. By barring attorney fees for a mediation conducted prior to the filing of a complaint, the necessary corollary is that attorney fees must be recoverable for a mediation conducted after the filing of a

complaint. This is consistent with adding mediation as a type of procedure required by § 1415(b) and requiring that the states pay the cost of the mediation process.

Thus, Congress appears to permit the award of attorney fees for a dispute resolution proceeding other than a due process hearing and a court action, namely a mediation occurring after the filing of a complaint. Since the CRP is an alternative dispute resolution procedure, an argument can be made that, in accordance with congressional intent and as a practical matter, it should be treated the same as a due process hearing. Both first require the filing of a complaint under § 1415(b)(6); once a request has been made, both are mandatory proceedings for the parties; and both are handled at the administrative level. Furthermore, a CRP, similar to a due process hearing, may well support a cause of action in court if the requirement for exhausting administrative remedies is waived.[6]

The traditional limitation on attorney fees under the IDEA, derived from other fee-shifting statutes, has been applied when the administrative proceeding commences. The presentation of a claim is the trigger point. Fees preliminary, although necessary, to an "action or proceeding" are barred by subsection (B). If parents do not request an administrative hearing, then they may not recover their attorney fees incurred in IEP meetings. *Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F.3d 68, 70 (9th Cir.1996). However, fees are recoverable for obtaining a favorable settlement after requesting, but prior to the scheduled due process hearing. *Barlow–Gresham Union High Sch. Dist. No. 2*, 940 F.2d at 1285. Similarly for a mediation, fees are not recoverable under subsection (D)(ii) prior to the filing of a complaint.

---

**6.** Under the IDEA, claimants may "bypass the administrative process" (1) "where exhaustion would be futile or inadequate;" (2) "where the issue presented is purely a legal question;" (3) "where the administrative agency cannot grant relief;" and (4) "when exhaustion would work 'severe or irreparable harm' upon a litigant." *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3rd Cir.1994).

Applying this same rationale results in a compelling argument for awarding attorney fees incurred in a CRP. The critical factor is whether a dispute has caused the parents to file a complaint seeking relief, forcing the school district either to concede or to contest the allegations. If the school district contests the allegations, then the line has been crossed from cooperation to litigation. At that point, nothing differentiates whether the complaint seeks resolution of the dispute through an informal CRP instead of a formal due process hearing.

In fact, disallowing the recovery of attorney fees incurred in a CRP would discourage early resolution and settlement of IDEA claims. After all, the IDEA is not the exclusive avenue of redress available to disabled children. Claims also may be pursued under the American with Disabilities Act of 1990, 42 USC § 12101 *et seq,* § 504 of the Rehabilitation Act of 1973, 42 USC § 1983, and other constitutional or statutory provisions, subject to the IDEA's exhaustion requirements. § 1415(*l*). Those other remedies permit the award of attorney fees to prevailing parties. In fact, before Congress amended the IDEA in 1986 to allow an award of attorney fees, the Oregon Court of Appeals held that the ODE has the authority under the Rehabilitation Act of 1973 to award attorney fees to parents as the prevailing party in a CRP. *Laughlin v. Sch. Dist. No. 1, Multnomah Cty.,* 69 Or.App. 63, 74, 686 P.2d 385, 392 (1984). If the IDEA prohibits recovery of attorney fees at the CRP level, then parents who are assisted by attorneys would be more likely to forego the CRP and pursue the more costly routes of either requesting a due process hearing or filing a claim in court under some other statute for which attorney fees may be recovered. As warned in *Upper Valley Ass'n for Handicapped Citizens,* 26 IDELR at 410 (citations and footnote omitted):

> In certain circumstances, a complainant may pursue a CRP complaint in a 42 USC § 1983 action in state or federal court. *See* 20 USC § 1415(f) [nka § 1415(*l*)]. Because § 1983 authorizes the awarding of attorneys' fees, the denial of attorneys' fees for CRP work would provide incentive for complainants to take their claims to court rather than accept an amicable settlement in the CRP process. As Judge Posner has stated in the context of IDEA due process hearing, "If the claimant must get his claim before a district judge in order to be entitled to attorney's fees, claimants' lawyers will be reluctant to settle cases at the earlier, nonjudicial stages."

Furthermore, the enforcement policy underlying the IDEA weighs in favor of awarding attorney fees to prevailing parents in a CRP. "Attorney fees awards are not designed to penalize defendants, but are rather to encourage injured individuals to seek judicial relief." *Teitelbaum v. Sorenson,* 648 F.2d 1248, 1251 (9th Cir.1981). The IDEA's fee-shifting statutory scheme is designed to encourage attorneys to protect the educational rights of disabled students by filing complaints. Without attorneys to vigorously advocate for persons who are least able to afford such representation, enforcement of the IDEA would be jeopardized. Permitting an attorney fee award to parents who prevail in the CRP furthers this goal, while a contrary rule would force parents to bear the costs of mandatory administrative proceedings and thereby inhibit the enforcement of a meritorious claim. One key means of enforcement is the CRP. Nothing in the IDEA suggests that Congress intended to draw the line between enforcement by a CRP and enforcement by a due process hearing.

Although this court hesitates to open the door to the unnecessary involvement of attorneys in the CRP, which is intended to be quick and inexpensive, two factors serve to ameliorate that concern. First, the only foreseeable involvement of attorneys in the CRP is to assist parents in drafting the complaint and submitting additional evidence to the SEA. Because the

SEA performs an independent investigation and holds no hearing, attorneys cannot otherwise participate. Thus, any attorney fees incurred by parents to prevail in a CRP should be minimal. Second, the court must exercise its discretion when awarding fees under the IDEA. If the attorney fees incurred by the parents in a CRP are unnecessary or unreasonable, then the court may award reduced fees or no fees at all.

For these reasons, this court concludes that subsection (B) permits an award of attorney fees incurred in a CRP.

### C. Subsection (D)(ii)

■ Thus, the next question is whether attorney fees are recoverable for attendance at IEP meetings "convened as a result of an administrative proceeding" under subsection (D)(ii). Unlike subsection (B) which refers broadly to a "proceeding," subsection (D)(ii) refers more narrowly to "an administrative proceeding." Based on the statutory context, if a CRP is a "proceeding" for which attorney fees may be recovered in subsection (B), then logically a CRP also is an "administrative proceeding" under subsection (D)(ii).

Unfortunately, the legislative history provides little insight. In 1997, Congress reauthorized and amended the IDEA, adding the prohibition in subsection (D)(ii). The only legislative history concerning this particular amendment states that: "The Committee believes that the IEP process should be devoted to determining the needs of the child and planning for the child's education with parents and school personnel." H R REP No 105–95 at 105 (1997), *reprinted* in 1997 USCCAN 78,

103.[7] This appears to be a general intent to discourage attorney participation in IEP meetings. However, it does not address why Congress added the exception to permit attorney fees for IEP meetings convened as a result of administrative proceedings.

The District fears dire consequences if plaintiffs are allowed to recover attorney fees for IEP meetings convened as a result of a CRP. Because the CRP must be completed within 60 days, the ODE has too little time to mediate the dispute and frequently orders IEP meetings as a means of implementing corrective action by the school districts. In 1998, ODE issued written findings of fact and conclusions in 28 complaint determinations. Affidavit of Suzy Harris, ¶ 3. In four of these determinations, ODE ordered no corrective action either because it found no violations or because the school district had already engaged in its own corrective action. *Id.* Of the remaining 24 determinations, ODE ordered an IEP meeting in 10 cases (or 40%). *Id.*

By ordering IEP meetings, ODE intends not only to correct IDEA violations, but also to establish a positive working relationship for the future between the parents and the school district. *Id,* ¶ 6. If a school district must pay for the parents' attorney to attend an IEP meeting every time such a meeting is convened as a result of a CRP correction action order, then the ODE's preference for ordering IEP meetings will be dampened considerably. *Id,* ¶ 7. Such IEP meetings would become a breeding ground for attorneys seeking to recover guaranteed attorney fees.

---

7. In discussing a proposed amendment that would have required courts to consider the impact of the education of all children of a SEA and local education agencies before awarding attorney fees, Senator Harkin stated

Again, [the IDEA] now provides that a court may award reasonable attorneys' fees as part of the costs of the parents of a child with a disability who is the prevailing party in a due process proceeding, or court ac-

tion. In other words, if a parent prevails at an administrative hearing, they are entitled to fees.
143 CONG REC § 4371 (daily ed. May 13, 1997) (statement of Sen. Harkin)
However, this comment was made on the Senate floor and does not pertain to the actual amendment codified as subsection (D)(ii). Therefore this court finds it unpersuasive.

On the other hand, the parents and the school district already are adversaries by the time they convene in an IEP meeting resulting from a CRP. Perhaps the parties would be more antagonistic towards one another after enduring a lengthy and costly due process hearing than after engaging in a less formal CRP. But the fact that the parents have filed a complaint against a school district with the SEA hardly engenders a positive working relationship. Whether the parties convene an IEP meeting as a result of an order issued by a hearing officer or by the SAE, the same standards must be addressed and resolved between parties with differing interests. At that point, an attorney's participation on behalf of the parents may well be beneficial.

Again, the safety mechanism is the court's discretion in awarding fees under the IDEA. If the attorney provides no assistance to the parents in the IEP meeting, but is attending merely to earn a guaranteed award, then the court has the discretion to award a reduced fee or no fees at all. However laudable ODE's purpose in ordering IEP meetings, this court concludes that subsection (B) permits the parents to recover attorney fees incurred in a CRP, which is a type of "proceeding," and that subsection (D)(ii) does not prohibit attorney fees relating to IEP meetings convened as a result of a CRP. As a consequence, in the future the ODE will have to carefully weigh and consider whether to continue its general practice of ordering IEP meetings in its corrective action orders if it wishes to avoid liability for parents' attorney fees.

Given this court's interpretation of the attorney fee provision in the IDEA, the next question is whether plaintiffs in this case are prevailing parties entitled to recover their attorney fees incurred in the IEP meetings.

### III. Did Plaintiffs Prevail?

Subsection (B) permits an award of attorney fees only to parents who are "the prevailing party." A prevailing party is one who obtains relief that alters the legal relationship of the parties. *Texas Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Krichinsky v. Knox County Schools*, 963 F.2d 847, 849–50 (6th Cir. 1992).

The Order found "substantial evidence to support many, but not all of the allegations that the District violated the IDEA with regard to the development and implementation of D.L.'s IEPs." Order, p. 11. Based on these findings, the Superintendent ordered a Corrective Action Plan which required the District, among other things, to provide staff training on reviewing and writing IEPs and within 30 days to submit a copy of D.L's revised IEP and placement for the 1998–99 school year. *Id* at 19–20. Plaintiffs claim that this Order, resulting from the CRP, constituted success on a significant issue that changed the parties' legal relationship for which they are entitled to recover their attorney fees at the subsequently convened IEP meetings.

However, plaintiffs were not represented by counsel during the CRP and, hence, incurred no fees in the course of the CRP. Instead, their attorney fees were incurred only after the CRP was complete and the dispute resolved by the ODE with the issuance of a Corrective Action Plan. As a result, the District argues that plaintiffs did not better their position as the result of any action for which attorney fees were incurred and do not satisfy the threshold requirement as a "prevailing party" under subsection (B).

Plaintiffs respond that they are not seeking their attorney fees as a "prevailing party" under subsection (B), but are asserting their right of reimbursement under subsection (D)(ii). As discussed above, plaintiffs' argument is premised on a misreading of the IDEA attorney fee provision. Plaintiffs first must be the "prevailing party" in "any action or proceeding

brought under this section" before the court may address what attorney fees are recoverable, including fees to attend IEP meetings pursuant to subsection (D)(ii). The IDEA clearly requires parents to prevail in a prior "proceeding" under § 1415 in order to file an action under subsection (B) to recover attorney fees. At that point, the parents may seek to recover attorney fees incurred in the prior "proceeding," including fees incurred to attend any IEP meeting convened as a result of the prior proceeding.

Parents may prevail in a prior "proceeding" either with or without the assistance of an attorney. If they prevail in either a due process hearing or a CRP with the assistance of an attorney, then the IDEA permits them to file an action in court to recover those fees.[8] But if they prevail in either a due process hearing or a CRP without the assistance of an attorney, then they have incurred no recoverable attorney fees under subsection (B).

However, the CRP does not necessarily end with the issuance of an order. Instead, it may end, as it did in this case, by requiring the parties to convene an IEP meeting as a necessary extension of the CRP. Here the CRP continued until the parties complied with the Corrective Action Plan, including submittal of a revised IEP which necessarily required IEP meetings to be convened. To ensure compliance with the Corrective Action Plan set forth in the Order, the ODE reserved the right "to order additional corrective action if needed to address the types of problems identified in this complaint." *Id* at 20. And, in fact, in November and December 1998, the ODE continued to monitor the implementation of D.L.'s IEP and placement and approved corrective action as it was completed. District's Exhibits 2 & 3.

This is similar to an injunction proceeding in which the court retains jurisdiction to enforce the terms of the injunction. If a party is entitled to recover its attorney fees, those fees include efforts to ensure compliance with the court's injunction. Applying this analogy and given that subsection (B) permits recovery of attorney fees incurred in the CRP, parents should not be foreclosed from recovering their fees incurred in the IEP meetings convened as a result of the CRP to ensure compliance. In other words, if the parents prevail in a CRP, then they are entitled to recover their attorney fees incurred in the CRP, including attendance at subsequent IEP meetings to ensure compliance with the CRP decision.

Accordingly, plaintiffs are entitled to recover their attorney fees in this case. Since the District does not dispute the amount requested as unreasonable or excessive, fees should be awarded in the full sum of $3,819.92.

### RECOMMENDATIONS

For the foregoing reasons, this court recommends that plaintiffs' Motion for Partial Summary Judgment (docket # 6) be GRANTED, defendant's Motion for Summary Judgment (docket # 8) be DENIED, and judgment be entered in plaintiffs' favor in the sum of $3,819.92.

### SCHEDULING ORDER

Objections to these Findings and Recommendations, if any, are due **May 13,** 1999. If no objections are filed, then the Findings and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than **May 28,** 1999. When the response is due or filed, whichever date is earlier, the Findings and Recommenda-

---

**8.** This court assumes that the language of § 1415(i)(3)(B) permits a prevailing party in a CRP, similar to a prevailing party in a due process hearing, to file an action in court to recover those fees without first exhausting administrative remedies by requesting a due process hearing. If not, the circumstances may permit waiver of exhaustion. See footnote 6.

tion(s) will be referred to a district court judge and go under advisement.

## APPENDIX

The IDEA attorney fee provision, 20 USC § 1415(i), effective July 1, 1998 provides as follows:

(i) Administrative procedures

(1) In general

(A) Decision made in hearing

A decision made in a hearing conducted pursuant to subsection (f) or (k) of this section shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) of this section and paragraph (2) of this subsection.

(B) Decision made at appeal

A decision made under subsection (g) of this section shall be final, except that any party may bring an action under paragraph (2) of this subsection.

(2) Right to bring civil action

(A) In general

Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

(B) Additional requirements

In any action brought under this paragraph, the court—

(i) shall receive the records of the administrative proceedings;

(ii) shall hear additional evidence at the request of a party; and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

(3) Jurisdiction of district courts; attorneys' fees

(A) In general

The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.

(B) Award of attorneys' fees

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

(C) Determination of amount of attorneys' fees

Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

(D) Prohibition of attorneys' fees and related costs for certain services

(i) Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—

(I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

(II) the offer is not accepted within 10 days; and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

(ii) Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e) of this section that is conducted prior to the filing of a complaint under subsection (b)(6) or (k) of this section.

(E) Exception to prohibition on attorneys' fees and related costs

Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.

(F) Reduction in amount of attorneys' fees

Except as provided in subparagraph (G), whenever the court finds that—

(i) the parent, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the school district the appropriate information in the due process complaint in accordance with subsection (b)(7) of this section;

the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

(G) Exception to reduction in amount of attorneys' fees

The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.